UNITED STATES, Appellee

v

WALLACE E. WILSON, Sergeant First Class, U. S. Army, Appellant

12 USCMA 690, 31 CMR 276

No. 15,415

March 9, 1962

*Captain Jerome D. Meeker* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*First Lieutenant Carl F. Wrench* argued the cause for Appellee, United States. With him on the brief was *Major Francis M. Cooper.*

## Opinion of the Court

QUINN, Chief Judge:

The accused was tried by general court-martial at Fort Dix, New Jersey, on two charges, one alleging larceny of $1,260.00 and the other a violation of paragraph 6*b*, Army Regulation 600–101, in that the accused accepted money from commercial insurance agents for the purpose of "facilitating life insurance transactions" at Fort Dix. He was acquitted of the larceny charge, but convicted of violating the regulation and sentenced to a bad-conduct discharge, confinement at hard labor for one year, and forfeiture of all pay and allowances. The question raised on this appeal is whether the regulation defines the prohibited conduct for all military personnel, or whether it sets out procedures and standards for installation commanders to follow in promulgating

690

regulations for the sale of commercial life insurance to service personnel. Obviously, the answer must be found in the language of the regulation. United States v Farley, 11 USCMA 730, 29 CMR 546.

The regulation is titled "Personnel-General, Commercial Life Insurance Solicitation." Its stated purpose is to "prescribe uniform policy and procedures" to govern solicitation of military personnel on Army installations for purchase of commercial life insurance "under appropriate safeguards" to insure no interference "with any military duty." The introductory policy statement provides that "commanders with not permit solicitation . . . on the installation unless the [insurance] company and its agents are properly licensed in accordance with the criteria appropriate to . . . the installation," as specified in paragraph 4c(9). It further provides that military personnel and civilian employees will not represent any company or person for solicitation or sale of insurance on any installation with or without compensation. Commanders are authorized to make available appropriate locations on the installation where agents may interview prospective purchasers, but solicitation "in barracks is strictly prohibited."

Section II of the regulation is titled "CONTROL AND SUPERVISION." Paragraphs 3 through 8 of the regulation appear under this section. The heading of each paragraph is as follows:

3. Responsibility
4. Application by companies
5. Authorizations
6. Supervision of solicitation
7. Suspension or Withdrawal of solicitation privilege
8. Reporting

It is obvious from the title and text of the paragraph that this unit of the regulation defines the persons responsible for control of solicitation for life insurance business and the standards to be utilized in the exercise of such control. Paragraph 3 explicitly imposes "responsibility" for the "control" of such solicitation on "an Army installation" upon "the installation commander." It directs that the control imposed by installation commanders will not be "more restrictive" than the requirements "contained herein." One would expect, after reading the paragraph, that the next sequential paragraphs in the section would prescribe the "requirements" by which commanders would measure the scope of their own controls. That expectation is fully realized.

Paragraph 4 of the regulation begins with the statement that commanders of installations within the United States and its possessions "will require each company applying for permission to solicit the purchase of life insurance on the installation to submit a notarized letter" listing specified items, such as the fact that its reserves are at least equal to a prescribed standard, and that restrictive or exclusionary clauses are plainly indicated on the face of the policies offered for purchase. Paragraph 5 also starts with a reference to action by installation commanders. Similarly paragraphs 7 and 8 define the actions that must, or that may, be taken by the installation commander. Between these two groups, which manifestly pertain only to commanders, is paragraph 6.

Paragraph 6 has five lettered subdivisions. Subdivision "a" says that solicitation "will be on an individual basis" and formations "will not be permitted to facilitate the sale." The subdivision does not say who will not prohibit the formations, but it is clearly implied that the prohibition is directed to the installation commander. For the moment we pass over subdivision "b," which is that part of the regulation purportedly violated by the accused. Subdivision "c" says that "[e]ach agent will be furnished with a copy of these regulations and the appropriate installation regulations." It further directs that the agent "will be required to indicate in writing" that he has read and understands the regulation and that a violation "may result in the withdrawal of the privilege of solicitation." Again, there is no specific delineation of persons in the military establishment who are bound by, and whose duty it is to comply with, the mandatory directions.

But here, too, it is manifest that the regulation is addressed to installation commanders. There is absolutely no indication that these provisions are intended to operate immediately and directly upon all persons on an Army installation from the commander to the newest recruit. In fact, if the regulation had such broad application it would be absurd. Logically, the subdivision applies only to installation commanders; impliedly, it requires they take appropriate action to insure compliance with the directives of the subparagraph. Subdivision "d" is directed exclusively to "installation commanders." Subdivision "e" says that agents will not have "allotment forms in their possession" or attempt to assist in "administrative processing" of such forms. It further provides that DA Form 2056 (Commercial Insurance Solicitation Record) "will be requisitioned through normal publications supply channels." Clearly, this subdivision is one of the "safeguards" designed to protect against interference with military duty. As such, it is concerned not with military personnel generally, but with the installation commander. As we pointed out earlier, the "safeguards" prescribed in the regulations are the standards to be followed by the commander in his control of the insurance solicitation program. That brings us back to subdivision "b." It reads as follows:

"b. Financial benefit or other valuable consideration will not be offered to or accepted by military or Department of the Army civilian personnel by representatives of commercial life insurance companies to facilitate life insurance transactions. This does not include advertising material for prospective purchasers, such as pens, pencils, wallets, notebooks, etc., normally with a value of $1 or less."

The Government contends that the prohibition of subdivision "b" operates directly upon all individual members of the Army. If the provision stood alone, it could be so construed. It is not, however, a self-sufficient provision, and it must be read in the context of what precedes it and what follows. The paragraph before paragraph 6 and those that follow it are, as we noted above, specifically directed only to commanders. Also, within paragraph 6 itself, subdivision "b" is bracketed by provisions obviously intended to govern exclusively the conduct of the installation commander. Considering subdivision "b" as a part of the whole regulation, it unmistakably appears as one of the general criteria that commanders are required to consider in the promulgation of local regulations to control solicitation of commercial life insurance within the installation. It does not itself regulate the conduct of all military personnel. What we said of a similar provision in an Air Force Regulation on the same subject is equally pertinent here.

". . . Subparagraph h prohibits remuneration or gifts; this prohibition which was allegedly violated by the accused is but part of the general enumeration. It must be read in the context of the whole paragraph. When so read, it is manifest that all proscriptions take effect only if solicitation is authorized and the installation commander, in carrying out the responsibility imposed upon him by the Air Force directive, incorporated them in his supervisory regulations. See United States v Hogsett, 8 USCMA 681, 25 CMR 185; United States v Plante, 22 CMR 389. We hold that the accused's conviction of a violation of paragraph 2h of the regulation cannot be sustained." [United States v Farley, 11 USCMA 730, 734, 29 CMR 546.]

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside and the charge is ordered dismissed.

Judges FERGUSON and KILDAY concur.