UNITED STATES, Appellant

v

EDDIE E. WEBBER, Airman Third Class, U. S. Air Force, Appellee

13 USCMA 536, 33 CMR 68

*Captain Richard T. Yery* argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

*Major William A. Crawford, Jr.,* argued the cause for Appellee, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

## Opinion of the Court

QUINN, Chief Judge:

Without proper authority, the accused appropriated a C–47 airplane and took off for a two-hour flight. As a result, he was charged with, and pleaded guilty to, wrongful appropriation of an airplane and three separate specifications of violating Air Force Regulation 60–16, April 12, 1961, by taxiing an Air Force plane onto an active runway without clearance (paragraph 17b(2)); by taking off in the airplane without prior clearance from the control tower (paragraph 17b(1)); and by operating an Air Force multi-engine plane with less than the prescribed minimum air crew (paragraph 18). He was sentenced to a bad-conduct discharge, total forfeitures, reduction to airman basic, and confinement at hard labor for two years and six months.

On initial review, the convening authority aproved the findings and sentence of the court-martial, but on further review a board of review held that the plea of guilty to the alleged violations of the Regulation was improvident. It dismissed those charges and reviewed the sentence for the remaining offense of wrongful appropriation of the airplane. It held that the maximum sentence for that offense included a bad-conduct discharge and confinement at hard labor for six months; and

it deemed the maximum punishment appropriate, in the circumstances of the case. The Judge Advocate General of the Air Force certified the case for review by this Court on the following issues:

"1. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE ACCUSED'S PLEAS OF GUILTY TO SPECIFICATIONS 1, 2 AND 3 OF THE ADDITIONAL CHARGE AND THE ADDITIONAL CHARGE WERE IMPROVIDENT?

"2. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT 'THE MAXIMUM PUNISHMENT WHICH MAY BE IMPOSED FOR WRONGFULLY APPROPRIATING AN AIRCRAFT IS BAD CONDUCT DISCHARGE, TOTAL FORFEITURES AND CONFINEMENT AT HARD LABOR FOR SIX MONTHS'?

"3. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE EXPLANATORY INSTRUCTIONS OF THE LAW OFFICER ESTABLISHED THE MAXIMUM PUNISHMENT IMPOSABLE FOR THE OFFENSE OF WRONGFUL APPROPRIATION OF AN AIRCRAFT?"

Air Force Regulation 60–16 "prescribes the general flight rules which govern the operation of Air Force aircraft flown by Air Force pilots, pilots of other services, foreign pilots, or civilian pilots."[1] Although it recognized

---

[1] The parts of the Regulation the accused allegedly violated are as follows:

"**17. Landing Area Rules:**

. . . . .

"b. *Landing and Takeoff.* Normally, landing and takeoff will be made on the runway most nearly aligned with the wind or as recommended by the airfield control tower. If the pilot does not concur in the tower rec-

that the accused acted as a "pilot" for the time being when he flew the aircraft he had taken without permission, the board of review reasoned that the accused was not a pilot within the meaning of the Regulation and, therefore, was not subject to its provisions. See United States v Wilson, 12 USCMA 690, 31 CMR 276. The board of review concluded that the purpose and general content of the Regulation showed unmistakably it was intended to apply only to those persons who had been "officially recognized" as having the skills, knowledge, and judgment required to fly an airplane. We agree with that conclusion.

Besides the manifest limitation on the kind of persons subject to its provisions, the Regulation ■ limits the class of aircraft to which it applies. It specifically says it "does not apply to the operation of Air Force aircraft on bailment, lease, or loan." Cf. Air Force Regulation 60–16, November 20, 1962, superseding the Regulation of April 12, 1961. The exclusion clearly means that even Air Force aircraft are not subject to the Regulation if the Air Force has relinquished immediate physical possession or control. When this limitation on the type of Air Force aircraft subject to the Regulation is considered with the previously expressed limitation on the persons subject to its provisions, it clearly appears that the Regulation applies only to ordinary, routine flights in regular Air Force operations. The point is emphasized by paragraph 5 of the Regulation, which provides that the "organization commander responsible for the flight will designate the pilot in command of the aircraft." The Regu-

lation could have been made to apply to all military personnel operating an Air Force aircraft on a military air field. Cf. 14 CFR 60.18(a), (b) (2). This Regulation, however, does not extend that far. See United States v Farley, 11 USCMA 730, 29 CMR 546.

Despite inapplicability of the flight regulations to the accused, the Government contends the specifi- ■ cations allege distinct offenses under the Uniform Code of Military Justice. Among other things, the argument presupposes that it is criminal to taxi onto an active runway and to take off in a military aircraft, without first receiving clearance from the control tower. We are not referred to any rule of law and we know of none which prohibits such conduct, aside from the military regulations and similar regulations of the Federal Aviation Agency which govern air traffic. See 49 USC §§ 1348(c), (d), 1471(a) (1), supplemented by 14 CFR 60.18. Certainly, it is not good practice; and perhaps under some circumstances it may constitute such gross disregard for the safety of persons or other aircraft as to be criminal. Perhaps all of accused's acts constitute departures from commonsense rules of air traffic, but in the absence of statute or regulation and injury to persons or property, it is not criminal to fail to exercise the degree of care a reasonable person in like circumstances should exercise. United States v Downard, 6 USCMA 538, 545, 20 CMR 254. Cf. United States v Snyder, 1 USCMA 423, 4 CMR 15. Going further, and assuming with Government counsel, that we can properly disregard the allegations in each specification in issue that the accused pur-

---

ommendations, he may takeoff or land on any usable runway when cleared by the control tower for such landing or takeoff. The following traffic control clearances apply:

"(1) Pilots will be specifically cleared to land or for takeoff by a control facility except during an emergency. [Specification 2, Additional Charge.]

"(2) Clearance to a runway will not be construed as a clearance to taxi on the active runway. Pilots will not taxi on the active runway

until cleared-into-position, cleared-for-takeoff, or similar type of clearance is received. [Specification 1, Additional Charge.]

. . . . .

"18. Aircrew Requirements for Multi-Engine Aircraft. Aircraft will not be operated with less than the minimum aircrew specified in the Aircraft Flight Manual. In an emergency or when military necessity dictates, group commanders or higher authority may authorize deviations." [Specification 3, Additional Charge.]

portedly violated Air Force Regulation 60–16, the specifications still do not set out enough to allege a criminal offense.

Federal Aviation Agency regulations contain substantially similar prohibitions as the Air Force Regulation. Even assuming these regulations can be substituted in the specifications for the Air. Force Regulation, they require clearance from the traffic control tower for taxiing and take off during "the hours the airport traffic control tower is in operation." There is no allegation here that the control tower was in operation at the time of the accused's acts. See United States v Crooks, 12 USCMA 677, 31 CMR 263. The charges, therefore, were properly dismissed. We answer the first certified question in the affirmative.

Turning to the second certified question, the board of review held that an aircraft is not a "motor ▮▮▮▮▮▮▮ ▮ vehicle" within the meaning of the provision of the Table of Maximum Punishments authorizing dishonorable discharge, total forfeitures, and confinement at hard labor for two years for wrongful appropriation of "any motor vehicle." We reach the same conclusion.

In McBoyle v United States, 283 US 25, 75 L ed 816, 51 S Ct 340, the United States Supreme Court considered whether an airplane was included within the words "motor vehicle," as then defined in the National Motor Vehicle Theft Act (18 USC § 408 now 18 USC § 2312). Pointing out that the words do not "evoke in the common mind" the picture of an aircraft, the Court held that they should not be given an expanded meaning "simply because . . . if the legislature had thought of it, very likely broader words would have been used." After the McBoyle case, Congress enlarged the scope of the Theft Act to include aircraft. Significantly, it did not change the ordinary meaning of the words "motor vehicle" by establishing a technical statutory definition encompassing airplanes; rather it retained the usual meaning of "motor vehicle" and merely added the words "or

aircraft" to the Act. See 18 USC §§ 2311, 2312.

Unquestionably, an airplane contains a motor and it is a vehicle "ordinarily used . . . as a conveyance." United States v Taylor, 12 USCMA 44, 46, 30 CMR 44. For some purposes, therefore, it can, as the Government argues, be compared to an automobile. It is not, however, an automobile in fact; and in common contemplation it is not considered a "motor vehicle." See Rich v Finley, 325 Mass 99, 89 NE2d 213. It may also be true that airplanes are generally more valuable than surface vehicles, but value is not the only reason for providing a greater punishment for appropriating a motor vehicle than is provided for wrongful appropriation of other articles of personal property. Taking an ancient and battered car for a "joy ride" subjects the offender to the same punishment as the appropriation of a factory-fresh Cadillac. Also, as appellate defense counsel point out, few items of personal property have greater value than Leonardo da Vinci's "Mona Lisa," but, assuming successful penetration of the security that surrounds it, misappropriation of La Gioconda would subject the wrongdoer only to the standard punishment provision. Nothing in the Table of Maximum Punishments indicates that the provision applicable to motor vehicles is intended to include airplanes. The offense in issue, therefore, is punishable under the general provision for wrongful appropriation of personal property. Accordingly, we answer the second certified question in the affirmative.

Our conclusion with respect to the second question indicates that the law officer's instruction on the limits of punishment for the offense in issue was correct. What might be the situation if the instruction were erroneous need not detain us. Whether the law officer's statement on the limits of punishment for each of several offenses of which the accused is convicted merely represents his personal "computation" of the maximum (see United States v Northrup, 31 CMR 599, petition denied, 12 USCMA 758, 31 CMR 314), or whether it establishes the "law of the case" (cf. United

States v Crawford, 12 USCMA 203, 30 CMR 203) is moot. We need not, therefore, answer the third certified question.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.