UNITED STATES, Appellee

v

JOSE A. CABALLERO, Private, U. S. Army, Appellant

No. 28,456

February 7, 1975

*Captain Michael L. Quirk* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Colonel Victor A. DeFiori,* and *Major H. M. Hougen.*

*Captain Gary F. Thorne* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen,* and *Captain Joel M. Martel.*

## OPINION OF THE COURT

FERGUSON, Senior Judge:

Having pleaded guilty pursuant to the terms of a pretrial agreement, the appellant stands convicted by a general court-martial at Fort Meade, Maryland, of two violations of a general regulation by his possession and use of heroin, an aggravated assault and battery, and the wrongful possession of narcotic paraphernalia, all in violation of Articles 92, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 928, and 934. Those findings, together with the court's adjudged sentence to a bad-conduct discharge, confinement at hard labor for 33 months, and forfeiture of all pay and allowances, remain unchanged throughout review below.

We granted review in this case to consider the following question:

Whether the specification of Charge II alleging wrongful possession of narcotic paraphernalia (syringe and needle), under Article 134, UCMJ, absent an appropriate regulation, does not allege an offense.

The specification of Charge II as

drafted, preferred, and upon which the appellant was arraigned and found guilty pursuant to his plea, alleged that he violated Article 134(3), UCMJ, by wrongfully and unlawfully having narcotic paraphernalia (a syringe with a needle) in his on-base possession. Although thus purporting to allege an offense under clause 3 of the general article, the specification in question contained no reference to any specific federal statute alleging a crime not capital which may have been violated. It likewise made no reference to any violation of Article 27 of the Maryland Code Annotated which might have been properly assimilated under clause 3 through the Federal Assimilative Crimes Act, 18 USC § 13. When the military judge explained the elements of this offense to the appellant in conjunction with his pleas of guilty, moreover, the military judge likewise made no mention of federal or state law. He merely advised the appellant that his plea admitted that his conduct in wrongfully and unlawfully possessing the narcotic paraphernalia was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. As so evidenced by the specification itself, the record of these trial proceedings, and the apparent understanding of both the Government and the defense as well as the military judge, therefore, it is clear that the appellant's conviction for this charged offense was actually premised upon either clause 1 or clause 2 of Article 134 and not clause 3 as alleged. In view of the fact that this Court has long recognized that a mere misdesignation of the charge is of absolutely no consequence where an accused is not misled,[1] this offense will be considered as one involving only conduct to the prejudice of good order and discipline or discredit to the service under the first two clauses of Article 134.

■ Although those two clauses appear to overlap substantially and are often treated on a dual basis, as obviously was the case below, they are nonetheless distinct and frequently apply singly. With reference to the allegation in the case at bar, where the appellant was charged with possessing narcotic paraphernalia on-board a military installation under circumstances apparently isolated from any civilian contact, it would appear that the "service discrediting" provision of clause 2 is not factually supported.[2]

Reduced to its bare essentials, therefore, the granted issue calls upon this Court to determine whether the wrongful and unlawful possession of narcotic paraphernalia on-post, absent any regulation or general order prohibiting that conduct so as to render any violation thereof an offense under Article 92, UCMJ, can be properly charged or alleged as an offense under clause 1 of Article 134. The answer to that question in turn depends upon whether the appellant's on-post possession of an instrument, such as a syringe with a needle, which only has potential or capability for use to inject a prohibited substance, is conduct which reasonably tends to directly and palpably affect good order and discipline in the armed forces. This is precisely the same issue which we raised but left unanswered in *United States v Teasley,* 22 USCMA 131, 46 CMR 131 (1973) when, in holding that the off-post possession of narcotic paraphernalia did not have such overriding military significance or service connection so as to confer jurisdiction upon a court-martial under the Supreme Court's ruling in *O'Callahan v Parker,* 395 US 258 (1969), we stated:[3]

Our conclusion as to the nontriable nature of the offense makes it unnecessary to consider whether, absent an appropriate regulation, possession of an instrument capable of being used to

---

[1] *See, e.g.,* United States v Leach, 7 USCMA 388, 22 CMR 178 (1956); United States v Ekenstram, 7 USCMA 168, 21 CMR 294 (1956); United States v Long, 2 USCMA 60, 6 CMR 60 (1952).

[2] *See* United States v Cramer, 8 USCMA 221, 24 CMR 31 (1957); United

States v Holt, 7 USCMA 617, 23 CMR 81 (1957); United States v Herndon, 1 USCMA 461, 4 CMR 53 (1952); United States v Snyder, 1 USCMA 423, 4 CMR 15 (1952).

[3] United States v Teasley, 22 USCMA at 132, 46 CMR at 132.

inject a prohibited substance constitutes a violation of Article 134 of the Uniform Code. See United States v Tee, 20 USCMA 406, 43 CMR 246 (1971). Compare United States v Giordano, 15 USCMA 163, 35 CMR 135 (1964).

▊ As recognized in *Teasley,* questions involving the extent of a court-martial's subject matter jurisdiction under *O'Callahan* are not co-extensive with questions involving the possible reach of Article 134 under either clause 1 or clause 2 of that article to punish all disorders, neglects, or other improper acts. Even though the military's jurisdiction to try such offensive conduct might otherwise be established, as ostensibly it could be found here in view of the fact that the appellant's possession of narcotic paraphernalia occurred on-base, it does not necessarily follow that all such "service connected" offenses are also directly and palpably prejudicial to good order and discipline as required by Article 134. Although this Court has implicitly found "service connection" when it affirmed an accused's conviction in *United States v Tee,* 20 USCMA 406, 43 CMR 246 (1971), for possessing a syringe on-base in violation of a general regulation charged under Article 92, UCMJ, but found no such service connection in *Teasley* when a similar off-base possession of a syringe was alleged, neither of these cases answers the precise issue raised here. While the decisions of this Court discussing possible "service connection" in order to support military jurisdiction are thus not determinative, they are nevertheless illustrative insofar as the concepts of "service connection" and "prejudice to good order and discipline" necessarily tend to overlap.

According to paragraph 213*b,* Manual for Courts-Martial, United States, 1969 (Rev), the phrase "to the prejudice of good order and discipline" as employed in clause 1 of Article 134 refers

only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. Almost any irregular and improper act on the part of a member of the military service could be regarded as prejudicial in some indirect or remote sense; however, the article does not contemplate these distant effects. It is confined to cases in which the prejudice is reasonably direct and palpable.

Apart from this Manual guidance, which is essentially identical to a similar provision earlier contained in paragraph 213*a,* Manual for Courts-Martial, 1951, this Court has employed much the same language in attempting to define the outer limits and scope of clause 1.[4]

In recently holding that Article 134 of the Code is not void for vagueness under the due process clause of the Fifth Amendment, a majority of the Supreme Court placed great significance upon the fact that this Court and other military authorities have construed that article in such a manner as to at least partially narrow its otherwise broad scope and to supply considerable specificity by way of examples of covered conduct. In drawing attention to the decisions of this Court as well as the more than 60 sample specifications of Article 134 offenses as contained in the Manual, a majority of the Supreme Court found a "substantial range of conduct" to which Article 134 applies "without vagueness or imprecision." *Parker v Levy,* 417 US 733, 754 (1974).

▊ Although this Court has previously sustained convictions for possessing narcotic paraphernalia when alleged as an offense violating a lawful general regulation or order under Article 92,[5] there is no precedent in this Court for such a prosecution under Article 134. The possession of narcotic paraphernalia is likewise not listed as an offense nor other-

---

[4] *See, e.g.,* United States v Hill, 22 USCMA 521, 48 CMR 6 (1973); United States v Sadinsky, 14 USCMA 563, 34 CMR 343 (1964); United States v Webber, 13 USCMA 536, 33 CMR 68 (1963).

[5] United States v Washington, 9 USCMA 313, 26 CMR 93 (1958); United States v Welborne, 2 USCMA 378, 9 CMR 8 (1953); United States v Christophe, 2 USCMA 375, 9 CMR 5 (1953); United States v Berry, 2 USCMA 374, 9 CMR 4 (1953); United States v Gohagen, 2 USCMA 175, 7 CMR 51 (1953).

wise discussed in the Manual. As we recognized in *United States v Teasley, supra,* moreover, there exists a substantial difference between the possession of a syringe with a needle on the one hand and the actual possession of the narcotic or prohibited substance itself on the other. Possession of the former, while having potential to be used for the injection of a narcotic substance, could also be used in a completely innocent manner, as, for example, the possession of such an instrument by a diabetic to inject insulin. An ordinary pipe used for smoking tobacco, moreover, could also be said to have potential for abuse in that such an instrument could be used to smoke marihuana. Under either situation, however, the possession of the instrument itself, without anything more, does not affect health or good order and discipline. It merely has only a potential to do so and, therefore, is only prejudicial to good order and discipline in a remote and indirect sense. But when the actual narcotic substance itself is possessed or used by a serviceman, we have found an inherent and direct capability of affecting the health, morale and fitness for duty of military personnel. Under this latter situation, the act of possessing the actual narcotic has been deemed directly prejudicial to good order and discipline and not merely a distant effect.

The Government's argument to the effect that the severity of the drug problem in the armed forces today necessitates a finding that the possession of narcotic paraphernalia ought to be recognized as an offense under Article 134 does not alter the fact that the possession of such instruments does not itself constitute an act directly prejudicial to good order and discipline. While that argument may well indicate a need to enact a general regulation or order prohibiting the on-base possession of such instruments susceptible to narcotic usage, it does not establish the requisite element of Article 134 that the prejudice be reasonably direct and palpable. Since this Court has long recognized and held that the possession of narcotic paraphernalia might otherwise be properly prosecuted as an Article 92 violation, where such an order or regulation exists, we find no demonstrated need to expand the reach of Article 134, beyond that which already exists, to cover an offense such as this.

The decision of the United States Army Court of Military Review affirming the accused's possession of narcotic paraphernalia under Article 134 is accordingly reversed and Charge II is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to the Court of Military Review for reassessment of the sentence on the remaining findings of guilty.

Judge Cook concurs.

Judge Quinn did not participate in the decision of this case.

---

[6] United States v Castro, 18 USCMA 598, 40 CMR 310 (1969); United States v Beeker, 18 USCMA 563, 40 CMR 275 (1969); United States v Williams, 8 USCMA 325, 24 CMR 135 (1957).