UNITED STATES, Appellee

v

DANIEL D. FARLEY, Jr., Chief Warrant Officer, U. S. Air Force, Appellant

11 USCMA 730, 29 CMR 546

*Lieutenant Colonel Philip J. Williamson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James L. Kilgore.*

*Major Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief was *Colonel John F. Hannigan.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of two charges of forgery (Charge I, specifications 1 and 2) and of accepting remuneration to facilitate commercial transactions with members of the Air Force contrary to an Air Force regulation (Charge III), in violation of Articles 123 and 92, Uniform Code of Military Justice, 10 USC §§ 923, 892, respectively. It imposed a sentence of dishonorable discharge, total forfeiture of pay and allowances, and confinement at hard labor for six months. Intermediate appellate authorities affirmed, and the accused petitioned this Court for further review. We granted review to consider whether the instruments alleged in the forgery counts are within the purview of Article 123 of the Uniform Code, and whether the regulation alleged in Charge III is a delegation of authority to subordinate commanders, rather than a delineation of prohibited conduct on the part of individuals.

So far as it relates to Charge I and its specifications, the evidence shows that the accused, Personnel Officer at Barksdale Air Force Base, had an arrangement with Hubbard, an agent of the Union Life Insurance Company, under which the accused received from Hubbard money for obtaining applicants for insurance from personnel at the base. The amount of the payment to the accused varied according to the amount of the insurance desired by the applicant. On October 1, 1957, following an established practice, the accused gave Hubbard a form of application used by the insurance company. The form purported to be signed by Donald

Lee Sweeten, an Airman First Class stationed at the air base. The blanks on the application were not filled in, but submitted with the form was a Work Sheet which gave the required background data called for by those blanks. In accordance with the established practice between the accused and Hubbard, Hubbard completed the application form from the information provided in the work sheet. At the bottom of the form was a provision entitled "Authorization for Additional Information" which authorized physicians and hospitals to provide the insurance company with information about medical examinations and treatments of the applicant. This provision also purportedly was signed by Sweeten. Sweeten, however, testified that he did not sign the application; that he knew nothing about it; that he did not authorize anyone to sign on his behalf; and that he never received a policy of insurance from Union Life. On October 2, 1957, the day after submission of the Sweeten application, the accused gave Hubbard an application purportedly signed by Troy Lee Shepard, a Staff Sergeant stationed at Barksdale Air Force Base. Shepard, like Sweeten, testified that he knew nothing about, and did not sign or authorize anyone to sign, the application on his behalf. Both applications were submitted by Hubbard, in completed form, to the home office of the Union Life Insurance Company and policies were issued thereon. Hubbard paid the accused for both applications. Sometime in February 1958, the accused admitted to Hubbard and Shepard that he had signed Shepard's name to his application, and that it "was a

**731**

stupid thing to do." Eventually, the accused was charged with uttering forged writings.

Each of the above transactions was made the basis of a separate specification. Except for the difference in the application, the specifications read alike. In material part they are as follows:

"In that Chief Warrant Officer Daniel D. Farley, Junior, . . . did . . . give to Jack C. Hubbard, an agent of Union Life Insurance Company, Little Rock, Arkansas, a printed form entitled, 'Adult Application for Insurance in the Union Life Insurance Company, Little Rock, Arkansas,' unexecuted other than the purported signatures of the applicant thereto, together with another such form or work sheet upon which was furnished information to fill out said application for insurance, with knowledge that the said Jack C. Hubbard would use such information to fill out the said application for insurance, and did thereby, with intent to defraud, utter a certain writing in the following words and figures, to wit:

[Here follows the application in the completed form. The additional information provision reads as follows:

"I hereby authorize any physicians, surgeons, or hospitals to furnish to the Union Life Insurance Company of Little Rock, Arkansas, any information that they may have or that their records may reveal as to any past examination or treatment they have given me, or any diagnosis they have made of me, or any operation that they have performed.
Date: 1 October 1957
/s/ Donald Lee Sweeten
Signature of Applicant"]

a writing which would, if genuine, apparently operate to the legal prejudice of another, the signature to which said writing was, as he, the said Chief Warrant Officer Daniel D. Farley, Junior, then well knew, falsely made."

Under Article 123 of the Uniform Code of Military Justice, one who utters an instrument which, █ if genuine, would "apparently impose a legal liability on another or change his legal right or liability to his prejudice" with knowledge that the signature thereon is false is guilty of forgery. See United States v Strand, 6 USCMA 297, 20 CMR 13. Appellate defense counsel contend that the application has no apparent efficacy and is, therefore, outside the definition of the offense. They maintain that the application for insurance constitutes a "bare request for the issuance of a policy" which does not prejudice the legal rights of either the applicant or the insurance company.

Our attention has been called to two decisions on the subject. In Dudley v State, 10 Ala App 130, 64 █ So 534, the court sustained an indictment for forgery based upon an application for insurance in which the applicant's signature was falsely made by the defendant. However, in Commonwealth v Dunleay, 157 Mass 386, 32 NE 356, the court apparently reached an opposite result. It held that the application is not a contract; while it might be used in such a way as to prejudice the legal rights of another, the "mere possibility" of such use was not sufficient to support the indictment. In our opinion, the *Dunleay* case more nearly describes the inchoate nature of the insurance application. Without allegation of extrinsic facts showing how the application could be, or was in fact, used to prejudice the legal rights of another, the specification is legally insufficient to charge an offense under Article 123. United States v Strand, supra; cf. United States v Addye, 7 USCMA 643, 23 CMR 107.

Accordingly, the findings of guilty of the specifications of Charge I are set aside, and the Charge and its specifications are dismissed.

In their second assignment of error, appellate defense counsel contend that the Air Force regulation which the accused is charged with violating does not apply to individuals. They maintain that the "basic orientation" of the regulation is directed toward the responsibilities of commanders. On the

other hand, the Government maintains that while the Air Force directive permits promulgation of supplementary regulations by installation commanders, the provision in issue is operative by its own terms and controls the conduct of Air Force personnel.

The regulation in issue is AFR 34-21, dated August 24, 1953. It is titled "PERSONNEL SERVICES" with a subheading caption, "Commercial Life Insurance Solicitation." Paragraph 1 states that the purpose of the regulation is to establish "a uniform Air Force policy in connection with solicitation of Air Force personnel by representatives of commercial life insurance companies on Air Force installations." Paragraph 2 prescribes the policy as follows:

"2. Policy. The control of the activities of dealers, tradesmen, or their agents is the responsibility of the installation commander. Life insurance solicitation may be permitted at the direction of the installation commander, under such regulations as he shall prescribe. If such solicitation is permitted, the commander's personal and active supervision is mandatory. Minimal supervisory regulations controlling solicitation by commercial life insurance agents will include the following:

"a. Commanders of Air Force installations over which exclusive jurisdiction has been ceded to the United States will permit solicitation of commercial life insurance on their installations when both the company and its agents are licensed in any State or the District of Columbia. In implementation of this provision, commanders in their discretion may require insurance companies not authorized to do business within the State to furnish such information concerning licensing as is filed in the State where domiciled.

"b. Where the State has retained exclusive or concurrent jurisdiction over the installation, the company and the agents must qualify under the laws of that State prior to soliciting business on the installation.

"c. In those instances where exclusive or concurrent jurisdiction has been retained by the State for only a part of the installation, the agent and the company must be licensed within the State to solicit in that area. On the remaining portion of the installation the provisions of a, above, will be applicable.

"d. There will be no solicitation of recruits or basic trainees.

"e. There will be no solicitation of personnel being processed at ports of embarkation, except by written appointment.

"f. There will be no mass solicitation at formations or captive audiences.

"g. Solicitation will not be permitted which interferes with military duty.

"h. Remuneration or gifts of any nature will not be offered to, or accepted by, military or civilian personnel employed by the Air Force to facilitate transactions.

"i. The recommendation of any commercial reporting or publishing agency's publication will not be utilized as the sole basis for determining whether a company or its agents will be permitted to solicit business on any Air Force installation.

"j. Commanders of installations outside the continental United States will, prior to granting permission for the solicitation of insurance on the installation, utilize the criteria set forth herein as a guide in determining the authority and qualifications of such companies and agents in accordance with appropriate treaties or agreements and any applicable laws of the jurisdiction wherein an installation may be located."

Paragraph 3 defines the term "concurrent jurisdiction" as used in the regulation. Paragraph 4 sets out the "Regulating Procedures."

In our opinion, the statement of policy is addressed to commanders, not to individuals. The directive does not itself authorize or prohibit solicitation of commercial insurance; rather it makes

that the "responsibility of the installation commander." He may permit solicitation or he may deny it. If he permits it, says the Air Force directive, he will promulgate "supervisory regulations" to control its exercise. As a minimum, his regulations must include the matters set out in the policy statement. Obviously, however, if there are no supervisory regulations the minimal matters are inapplicable. Thus, if solicitation on the installation is not permitted by the installation commander, necessarily there can be no solicitation of recruits; no solicitation at points of embarkation; no mass solicitation at formations or captive audiences; and no interferences with military duty. Subparagraph h prohibits remuneration or gifts; this prohibition which was allegedly violated by the accused is but part of the general enumeration. It must be read in the context of the whole paragraph. When so read, it is manifest that all proscriptions take effect only if solicitation is authorized and the installation commander, in carrying out the responsibility imposed upon him by the Air Force directive, incorporated them in his supervisory regulations. See United States v Hogsett, 8 USCMA 681, 25 CMR 185; United States v Plante, 22 CMR 389. We hold that the accused's conviction of a violation of paragraph 2h of the regulation cannot be sustained. The findings of guilty of Charge III, therefore, are set aside and the Charge is ordered dismissed.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside and the charges are ordered dismissed.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

Accused was charged with violating paragraph 2h, Air Force Regulation 34-21, and the pertinent portions of that directive are set forth in the principal opinion. While some evidence in the record indicates life insurance solicitation was permitted on the station, it is not contended that accused violated

**734**

any base regulation and in fact it was not established that there were any such regulations. As it is my view that AFR 34-21, by its own terms, is not self-executing and requires implementation by installation commanders before the enumerated proscriptions become effective, I join in setting aside accused's conviction for this offense. See United States v Ekenstam, 7 USCMA 168, 21 CMR 294; cf. United States v Curtin, 9 USCMA 427, 26 CMR 207.

With regard to the majority's holding on the forgeries, however, I must register my dissent. The issue is simply whether the instruments uttered would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice. Citing Commonwealth v Dunleay, 157 Mass 386, 32 NE 356, as descriptive of "the inchoate nature" of insurance applications, the Court holds that absent an allegation of extrinsic facts showing how the applications could be or were used to prejudice the legal rights of another, the specifications are insufficient to charge the offense of forgery. Not only do my associates ignore our own holdings in this area, but insofar as the *Dunleay* case may be pertinent, I point out that the Court of Appeals of Alabama expressly declined to follow it in Dudley v State, 10 Ala App 130, 64 So 534. There the court, after extended analysis and discussion, held an application for life insurance could properly be the subject of forgery, and I invite the attention of the interested reader to that well-reasoned opinion.

But quite apart from civilian cases, I am sure that this decision flies full in the face of prior holdings by this Court in United States v Addye, 7 USCMA 643, 23 CMR 107; United States v Taylor, 9 USCMA 596, 26 CMR 376; and United States v Noel, 11 USCMA 508, 29 CMR 324. See also United States v Reynolds, 21 CMR 707. Cf. United States v Strand, 6 USCMA 297, 20 CMR 13. True it is that an insurance application is an offer, subject to acceptance by the insurer. That, however, is of no consequence, for even though documents involved in our prior

decisions were not legally enforceable in the strict sense and could not require action by those to whom they were submitted, we have nonetheless held they may properly be the subject of forgery where they purport to confer a standing one otherwise would not have had. Here it must be borne in mind that the offeree, in acting, will rely upon the representations in the applications and, if they appear to be in order, may accept and undertake the insurance. Obviously, upon acceptance and issuance of insurance policies, contractual rights and obligations originating from the terms of the offer come into being. That is precisely what happened in the case at bar, as the insurance carrier bound itself to insure the named applicants for a short-term period. Moreover, the applications on their face waived the doctor-patient relationship and permitted the insurance company to obtain unwarranted confidential information. Thus, the false applications served to perfect insurance contracts, and accordingly they are properly the subjects of the offense of forgery under our prior holdings. Finally, the applications had a direct effect on the financial agreement between accused and the insurance agent, Hubbard. Having tendered to the agent apparently genuine applications which resulted in issuance of insurance policies, accused became entitled to a commission under the terms of their agreement.

Accordingly, and for the above stated reasons, I conclude the applications are subject to the provisions of Article 123, Uniform Code of Military Justice, 10 USC § 923, and thus I see no basis for upsetting the findings of guilty of forgery.