UNITED STATES

v.

Abraham B. WELDON, Jr., 046 46 1627, First Lieutenant (0–2), U. S. Marine Corps Reserve.

NCM 78 1626.

U. S. Navy Court of Military Review.

Sentence Adjudged 5 May 1978.

Decided 8 Aug. 1979.

CAPT Allan H. Meltzer, USMCR, Appellate Defense Counsel.

LT J. G. VanWinkle, JAGC, USNR, Appellate Government Counsel.

Before BAUM, PRICE and MICHEL, JJ.

MICHEL, Judge:

The Government's theory of appellant's alleged criminality was that appellant attempted to cancel a lease, under which he and his family had secured housing accommodations in an apartment complex in the vicinity of Camp Lejeune, North Carolina, by fraudulently indicating to the landlord that appellant was in receipt of permanent change of duty station orders such as would require appellant to move from his present

duty station to Washington, D. C.[1] The particular activities alleged, giving rise to the two charges and their respective specifications[2] of which appellant was found guilty, were that appellant had prevailed upon a sergeant M to prepare a false written "Request for Personal Data Sheet," which facially indicated that appellant was in receipt of permanent change of duty station orders, that appellant thereafter presented this document to both his landlord and his landlord's agent, and that subsequently appellant telephonically communicated with his landlord representing that the call originated in Washington, D. C. and that appellant planned to return to the Camp Lejeune area the following day to settle his account with the landlord respecting the rental premises. After trial on the merits, appellant was convicted of both offenses and was sentenced by the members of his general court-martial to dismissal from the service.

 The offense of forgery is well known in both civilian and military criminal jurisprudence. Succinctly, any person

> [w]ho, with the intent to defraud—(1) falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or (2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered; is guilty of forgery . . . .

Article 123, Uniform Code of Military Justice, 10 U.S.C. § 923. One of the elements of this offense is that there be an apparent capability of the writing as falsely made or altered to impose a legal liability on another or to change his legal right or liability to his prejudice. Paragraph 202, *Manual for Courts-Martial, 1969 (Rev.)*. In this regard, the apparent legal efficacy of the writing in question must be such that it must appear, either on its face or from extrinsic facts, to impose a legal liability on another, or to change a legal right or liability to the prejudice of another. *Id.* However, if the writing has neither real nor apparent legal efficacy, such as where the instrument is affirmatively invalid on its face or cannot impose a legal liability, there is no forgery. *Id.* Since the document, which is at the core of the evidence against appellant, is clearly not invalid on its face, our inquiry turns to whether or not its use by appellant could impose a legal liability on the lessor or change a legal right or liability to the lessor's prejudice.

The scenario developed at trial by the prosecution was that appellant and his wife had become dissatisfied with their rented quarters and sought to extricate themselves from their then present lease without forfeiting a $125.00 security deposit. Under the terms of the lease, the only avenue open to appellant to achieve this goal was to present the landlord with a set of orders of the type specified in the lease and advance written notice to terminate the lease and vacate the premises.[3] Sergeant M, testify-

---

1. The pertinent part of the lease here in question, the "military orders escape clause," provides as follows:

 This lease may be terminated after three (3) months only by military orders (out of Onslow County) or deposit forfeit. If deposit is forfeited, Lessee must pay all charges, including any unpaid rent, electric bill, damages and cleaning. Lessor must receive a written ten (10) day vacancy notice, or deposit forfeited.

2. Appellant was charged with forgery, Art. 123, UCMJ, 10 U.S.C. § 923, and conduct unbecoming an officer and gentleman, Art. 133, UCMJ, 10 U.S.C. § 933. As to the former, the Government's proof was directed at appellant's complicity as an aider and abettor who counseled or commanded sergeant M to create the fallacious document. Respecting the latter, the prosecution sought to establish that, when appellant ostensibly was in Washington, D. C. conversing with his landlord by telephone, appellant actually was on duty at Camp Lejeune, North Carolina.

3. *See* note 1, *supra.* While appellant had not resided in the rental unit for the full three month period at the time he allegedly took the actions found criminal in the forum below, his putative purpose—otherwise not objectionable to the landlord—was to terminate the leasehold effective upon the expiration of that prescribed period.

ing under a grant of immunity,[4] indicated that appellant approached him, in confidence, at the former's work center in their unit's administrative office, with a request that the sergeant fabricate documentation purporting to alter appellant's duty situs for presentation to the landlord to effectuate the avowed purpose. The sergeant, relating that he was at first reluctant to comply with this request because he knew "it would be wrong to do," finally relented after being approached by appellant for the third time. Thereafter, he plagiarized a file copy of a document deemed sufficient for that purpose, which was ultimately presented by appellant to the landlord. Upon presentment to the landlord, however, it became apparent that the sergeant's efforts were essentially wasted since, according to the landlord's testimony, the document was not accepted because "it didn't look right," the landlord never believed that it was an order, and it was not going to be accepted until he verified the document. Appellant and his family eventually vacated the leased premises and forfeited the security deposit.

The issue thus framed by the preceding facts is whether the nature of the bogus document, together with the other pertinent evidence of record, is sufficient to bring that document within the pale of the forgery statute. To effectively deal with this issue, a review is required of those cases which attempt to come to grips with the offense of forgery in a variety of contexts. In this regard, we borrow heavily from appellate defense counsel's briefing expertise.

In *United States v. Strand,*[5] the accused wrote a letter to his wife on an official form and had another man sign it in the name of a fictitious officer. The letter purported to notify his wife that he had been killed. The author was convicted of forgery in violation of Article 123. On appeal, the Court found that the writing in question did not constitute a forgery:

The Government and the accused agree that the critical question in this case is whether the letter has apparent legal efficacy. That question is not concerned with the falsity of the contents of the letter, but only with what it purports to be. A writing may be made with knowledge that the information it contains is false, but if it is genuine it is not forgery. *United States v. Staats*, 8 How 41 [12 L.Ed. 979] (1850); *United States v. Davis*, 231 U.S. 183, [58] L.Ed. 177, 34 S.Ct. [112] 113.

. . . . .

On its face, therefore, if genuine, the letter could not possibly prejudice the Government in any legal way. It conferred no rights against the Government, upon Patricia, or upon anyone else which would not have existed if the letter had not been written. *See Territory v. DeLena* [Delana] 3 Okla 573, 41 Pac 618; *United States v. Swan*, 13 [131] Fed 140 (Ed Mo) (1904).

. . . . .

. . . *But intended or completed fraud does not constitute forgery.* The written instrument used to accomplish the deception must have apparent efficacy to create, increase, diminish, discharge, transfer, or otherwise affect a legal right. Thus, a false letter of introduction may induce a person to extend courtesies which he would not have accorded in the absence of the letter; but having no apparent legal force, the letter, without more, cannot be the basis for a charge of forgery. *Waterman v. People*, 67 Ill. 91; *State v. Evans*, 15 Mont 539, 39 Pac. 850. For the same reason the false signing of

---

4. Sergeant M apparently was granted "testimonial" immunity by the general court-martial convening authority. The terms of the grant make it clear that this witness was protected from both the use and derivative use of his testimony given at appellant's trial. Neither the grant, its terms, nor the timing of notice to the defense of the existence of the grant is challenged here. *See United States v. Saylor*, 6 M.J. 647 (N.C.M.R.1978).

5. 6 U.S.C.M.A. 297, 20 C.M.R. 13 (1955).

the name of a candidate for public office to a letter reciting his proposed legislative program is not a forgery. *Barnes v. Crawford*, 115 NC 76, 20 SE 386. Other examples are readily available, but we need not catalogue them. *The important thing is to note the difference between the contents and the legal effect of the instrument.*

. . . . .

. . . *To be the subject of a forgery, the letter must be capable of being used as proof of the fact it recites. State v. Smith*, 16 Tenn 150 (8 Yerg); *State v. Corley*, 63 Tenn 410. *In other words, the instrument must be invested with some legal force. If that is lacking, the making of the writing, even though false, is not forgery.*

6 U.S.C.M.A. at 302–303; 20 C.M.R. at 18–19 (emphasis added).

In *United States v. Sher*, 21 C.M.R. 371 (A.B.R.1956), the accused had executed a writing which purported to be a note, signed by a named major, to his first sergeant directing that he be placed on light duty. The accused was found guilty of forgery in violation of Article 123. The Army Board of Review, citing *Strand, supra*, held that the writing had no legal efficacy in that it gave the accused no rights that he would not otherwise have had. The document in question merely purported to convey information, "but [did] not purport, of itself, to change the accused's status, nor, under any law or regulation, [was it] capable of being used as evidence of the accused's physical fitness or status." [6] In reaching its decision in *Sher*, that court also relied upon an earlier Air Force Board of Review case, *United States v. Rice*, 1 C.M.R. 168 (A.F.B.R.1951), in which the accused fabricated a letter to his commanding officer, purporting to be signed by the Secretary of the Air Force. This letter stated that the accused was assigned duties of a confidential nature and was not to be assigned duties outside of the District of Co-

lumbia. The writing there was held not to constitute a forgery.

Other courts, in cases cited by appellant in his brief, have similarly overturned forgery convictions where the documents relied upon by the prosecution to prove its case were found legally deficient. Thus in *United States v. Aronson*, 25 C.M.R. 653 (A.B.R.1957) (bank deposit slips), *United States v. Farley*, 11 U.S.C.M.A. 730, 29 C.M.R. 546 (1960) (insurance application), and *United States v. Wilson*, 32 C.M.R. 872 (A.F.B.R.1962), *rev'd on other grounds*, 13 U.S.C.M.A. 670, 33 C.M.R. 202 (1963) (credit union reference form), the respective appellate entities concluded that, because the documents under scrutiny were lacking in legal force, they could not lawfully support a criminal allegation under the forgery statute.

The Government concedes appellant's position grounded in the previous line of cases; however, it is strenuously argued by the Government that other decisions impact adversely on appellant's rationale. It is true that in *United States v. Cummings*, 3 M.J. 934 (A.C.M.R.1977) it was found that bank deposit slips were held to be the proper subject of a forgery. There, our Army brethren distinguished *Aronson, supra*, on the ground that the deposit slips in *Aronson* were part of a scheme on the part of the accused there to have his coworkers believe that he did not have possession of the funds in question, and not an attempt to defraud a bank. *Id.* at 936. Thus, where the deposit slips were actually used in a manner which would leave the bank *"no alternative"* but to credit the funds represented by the deposit slips to the account to which they were ostensibly originally deposited, the deposit slips were the proper subject of a forgery allegation. *Id.* (emphasis added). Similarly, appellate Government counsel misconstrues this Court's decision in *United States v. Tobin*, No. 77 1761 (NCMR 20 January 1978). The precise question in *Tobin* was whether the accused in that case had entered provident pleas of guilty to forgery of five checks and an application

**6.** 21 C.M.R. at 373.

for a military identification card.[7] In disposing of the issue, we indicated that when the appellant there, with the intention of cashing worthless checks, opened up a checking account with a bank in an assumed name, funded the account himself, and wrote checks on the account, he committed forgery when checks were presented for payment by the payee at a time when the account fund had been exhausted. *Id.* (Slip Opinion at 2–3). That holding was premised, *inter alia,* on the basis that the bank, if the checks were genuine, was bound to pay over funds in accordance with the mandate on the face of the negotiable instrument. *Id.*

█ The legal principle which may be distilled from the foregoing is that, for the offense of forgery to be committed, the putative document must be capable of producing a legal result if used in the manner contemplated by the party in interest against whom a prejudicial legal right could be asserted.[8] In other words, the instrument itself, without resort to anything *outside* the four corners of the writing, must be such as would, in the normal course of events, reach the result contemplated by Article 123. In the instant case, the writing under consideration falls far short of that requirement. On its face the document signifies that orders changing the appellant's permanent duty station will not be issued until the requested information is provided to cognizant higher authority and other specified preparatory action is taken.

As such, it is merely a request for information. *Cf. United States v. Sher, supra.* Its true nature is underscored by the landlord's stated refusal to accept it under the terms of the lease for the purpose desired by appellant, at least without the further safeguard of verification by the landlord of appellant's status through his military superiors. Thus, if the document was imbued with any legal force at all, such was dependent upon the good graces of the landlord to accept something less than the terms of the lease required. This convinces us that, even if genuine, the "Request for Personal Data Sheet" prepared by sergeant M and presented by appellant to his landlord gave appellant only an inchoate right which itself rested upon the mere possibility that the landlord would accept it in lieu of a set of official orders, terminate the lease, and return appellant's security deposit. Under these conditions we are forced to conclude that the document cannot support appellant's conviction of forgery. *Cf. United States v. Farley, supra,* 11 U.S.C.M.A. at 732, 29 C.M.R. at 548; *see also United States v. Williams,* 17 U.S.C.M.A. 321, 38 C.M.R. 119 (1967); *United States v. Cart,* 36 C.M.R. 858 (A.F.B.R.1966), *pet. denied,* 16 U.S.C.M.A. 650, 36 C.M.R. 541 (1966).[9]

█ We do, however, affirm appellant's conviction of the Article 133, Uniform Code of Military Justice, offense. In this regard, we need not analyze in minute detail the factual predicate for military juris-

---

7. This Court found the plea of guilty to the forgery of the military identification card to have been improvident because the specification failed to allege an offense in that, since the document did not convey intrinsically how it might legally prejudice anyone, extrinsic facts should have been alleged in the specification indicating how the card was or could be used to someone's legal prejudice. *Tobin, supra,* slip opinion at 4 *citing United States v. Billups,* 49 C.M.R. 802 (A.C.M.R.1975); *United States v. Farley, supra; United States v. Heard,* 1 M.J. 538 (A.F.C.M.R.1975); *United States v. Killen,* 20 C.M.R. 489 (A.B.R.1956). No such infirmity is present here.

8. In our view, it does not matter that the document is not in fact used in such a manner.

9. Similarly, we find no merit to appellant Government's contention that, at the very least,

the facts should support a conviction for attempted forgery under Art. 80, UCMJ, 10 U.S.C. § 880. In our view, *United States v. Benjamin,* No. 71 3079 (NCMR 29 February 1972) compels a contrary conclusion; rather than supporting the Government's position, that case, where we held the document to present a case of factual impossibility, acknowledged that *legal impossibility* could undo an otherwise valid attempted forgery conviction. *See id.,* slip opinion at 4, *comparing United States v. Thomas,* 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962) *with United States v. Clark,* 19 U.S.C.M.A. 82, 41 C.M.R. 82 (1969). Because the document in the case at bar had no apparent legal efficacy, it was legally impossible for appellant to be guilty of an attempt to commit the crime charged.

diction[10] as required by *Relford v. Commandant*, 401 U.S. 335, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971) and its military progeny. Suffice it to say that our attention has not been invited to, nor has our research disclosed, case law in any civilian jurisdiction which would make criminal the act of attempting to wrongfully terminate a leasehold by the expedient of a fraudulent telephone call wherein the lessee imports false information to the lessor. *But see* 18 U.S.C. § 1343, which could have applied had appellant's telephone call been proven to be of the *interstate* variety. Conduct unbecoming an officer and gentleman is a uniquely military offense. *See* WINTHROP, MILITARY LAW AND PRECEDENTS, 710–719 (2d ed. 1920). The specification reciting appellant's alleged criminality sets forth that on the date in question he was a first lieutenant in the U. S. Marine Corps Reserve on active duty. Owing to this status he was subject to military prosecution for any act, official or unofficial, which would detract from and compromise his character as a gentleman, thereby seriously compromising his standing as an officer. *See* paragraph 212, *Manual for Courts-Martial, 1969 (Rev.)*. He was not, however, subject to trial as a miscreant in a civilian forum. The only forum available to try appellant was the one in which trial was had and in which jurisdiction[11] was patent. *See O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

The remaining assignments either lack merit or are rendered moot by the action we take today.

Accordingly, only so much of the findings as finds appellant guilty of a violation of Article 133, Uniform Code of Military Justice, is affirmed; the remaining charge and

specification is set aside and dismissed. The sentence is set aside. A rehearing on sentence may be ordered or the appropriate authority below may approve the case with no sentence.

Senior Judge BAUM and Judge PRICE concur.

---

10. This is another case where apparently some of the trial participants tended to confuse and commingle *in personam* jurisdiction and subject matter jurisdiction because of the dicta in *United States v. Alef*, 3 M.J. 414 (C.M.A.1977). (R. 38–42). *See also United States v. Albrektsen*, No. 78 1034 (NCMR 15 November 1978) (Slip Opinion at 2).

11. The trial judge, in effect, submitted the perceived jurisdictional issue to the court members for resolution when he instructed them that in order to find appellant guilty of this offense they must find beyond a reasonable doubt that the telephone call in question was placed by appellant from some location aboard Camp Lejeune, North Carolina. Although this was erroneous, *see United States v. Bailey*, 6 M.J. 965 (N.C.M.R.1979), there was obviously no prejudice to appellant.