UNITED STATES, Appellee,

v.

William P. SCHWARZ, Specialist Four,
U.S. Army, Appellant.

No. 41,941.

CM 440676.

U. S. Court of Military Appeals.

March 14, 1983.

For Appellant: *Captain Gunther O. Carrle*
(argued); *Colonel Edward S. Adamkewicz,
Jr., Major Raymond C. Ruppert, Captain*

*Joseph A. Russelburg* (on brief); *Colonel
William G. Eckhardt.*

For Appellee: *Captain John L. Plotkin*
(argued); *Colonel R.R. Boller, Lieutenant
Colonel John T. Edwards,* and *Captain Paul
K. Cascio* (on brief).

*Opinion of the Court*

COOK, Judge:

Pursuant to his pleas, the accused was
convicted by general court-martial of brib-
ery and six specifications of forgery, in
violation of Articles 134 and 123, Uniform
Code of Military Justice, 10 U.S.C. §§ 934
and 923, respectively. He was sentenced to
a bad-conduct discharge, confinement at
hard labor for 18 months, forfeiture of all
pay and allowances, and reduction to pri-
vate (E–1). In accordance with a pretrial
agreement, the convening authority re-
duced the period of confinement to 1 year
and approved the sentence as modified.
The Court of Military Review affirmed
C.M.R., 12 M.J. 650, the approved findings
and sentence. For the first time on appeal,
both here and below, the accused challenges
the sufficiency of the forgery specifications
and the providence of his pleas to them.
We granted this issue:

> WHETHER THE MILITARY JUDGE
> ERRED BY ACCEPTING AS PROVI-
> DENT A PLEA OF GUILTY TO SIX
> SPECIFICATIONS UNDER ARTICLE
> 123 WHICH FAILED TO ALLEGE ALL
> THE ESSENTIAL ELEMENTS OF THE
> OFFENSE OF FORGERY.

Finding the accused's pleas provident, we
affirm.

With the exception of the name of the
alleged victim, the six specifications identi-
cally read:

> In that Specialist Four William P.
> Schwarz, US Army, Headquarters and
> Headquarters Company, 1st Battalion,
> 50th Infantry, 2d Armored Division, did,
> at Fort Hood, Texas, on or about 1 No-
> vember 1980, with intent to defraud
> falsely fill in an allotment for $35.00 to

American Pioneer Life Insurance Company on a DA Form 1341, JUMPS-Army Allotment Authorization, signed by Private E–1 [name of victim]. Jurisdiction attaches to the military in that the offense occurred at Fort Hood, an area under military control and jurisdiction.[1]

Article 123 defines forgery in this manner:

Any person subject to this chapter who, with intent to defraud—

(1) falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or

(2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered;

is guilty of forgery and shall be punished as a court-martial may direct.[2]

Paragraph 202, Manual for Courts-Martial, United States, 1969 (Revised edition), offers the following discussion of forgery:

Forgery is the false making or altering with intent to defraud of any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or the uttering, offering, issuing, or transferring, with intent to defraud, of such a writing known by the offender to be so made or altered.

\*   \*   \*   \*   \*   \*

With respect to the apparent legal efficacy of the writing falsely made or altered, the writing must appear either on its face or from extrinsic facts to impose a legal liability on another, or to change a legal right or liability to the prejudice of another. . . .

In order to constitute forgery by altering a writing, the alteration must effect a material change in the legal tenor of the writing. Thus an alteration whereby any obligation is apparently increased, diminished, or discharged is material.

In defining the elements for forgery, the Manual lists:

(a) That a certain signature or writing was falsely made or altered, as alleged; (b) that the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; (c) that it was the accused who so falsely made or altered the signature or writing or uttered, offered, issued, or transferred it, knowing it to have been so made or altered; and (d) that the intent of the accused was to defraud.

Reviewing the challenged specifications, it is apparent elements (a), (c) and (d) are expressly alleged. However, there is no specific allegation that the instrument subject to the forgery "would . . . apparently impose a legal liability on another or change his legal right or liability to his prejudice." [3] The question we must resolve

---

1. The accused, then serving as a clerk in-processing trainees, was approached by a woman named "Virginia," who proposed that he obtain from the trainees signed allotment forms which she would complete with the name of her insurance company and submit for payment. For this, the accused would receive $35.00 per form. The accused then attempted to bribe the battalion finance clerk to process the allotment forms through without conforming to normal procedures. The finance clerk reported the scheme to his supervisors. The scheme apparently is similar to that described in *United States v. Phillips,* 14 U.S.C.M.A. 620, 34 C.M.R. 400 (1964).

2. Article 123, Uniform Code of Military Justice, 10 U.S.C. § 923, is derived from Article of War 93 and "incorporate[s]" "[t]he basic common-

law elements." Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1233 (1949).

3. Model specification form 93 contains language alleging that the instrument "would" or "could" "operate to the legal prejudice of another." Appendix 6, Manual for Courts-Martial, United States, 1969 (Revised edition). A footnote to that form recognizes that there are documents which by definition "would clearly operate to the legal prejudice of another." Instruments not falling within that class should be alleged with an accompanying allegation of how such prejudice would occur. *See United States v. Farley,* 11 U.S.C.M.A. 730, 29 C.M.R. 546 (1960). In *United States v. Driggers,* 21 U.S.C.M.A. 373, 45 C.M.R. 147 (1972), and

is whether identification of the forged instrument—"DA Form 1341, JUMPS-Army Allotment Authorization"—and its significant contents is sufficient to fulfill that requirement.

In *United States v. Sell,* 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953), we held:

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*Id.* at 206, 11 C.M.R. at 206. *See also United States v. Hopf,* 1 U.S.C.M.A. 584, 5 C.M.R. 12 (1952).

■ In essence, then, a specification must provide notice to an accused of the criminal offense against which he must defend, and provide a bar against a second trial for the same offense after acquittal or conviction of the offense charged. Here the accused did not, at trial, question the adequacy of the specifications to which he pleaded guilty, nor did he move to have them made more definite and certain. Neither did the accused's counsel move to dismiss any of the specifications or either of the charges. After announcement of his pleas of guilty, the military judge enumerated the elements of the offense of forgery to which the accused had pleaded. As to the second element, the military judge stated:

> [S]econdly, they would have to prove that this DA Form 1341 would, if genuine, apparently impose a legal liability on another individual ... in this case, it would be ... [the victim] and it would reduce his pay due from the Army;

The accused responded that he understood "all of those offenses and what they ... [were] all about"; that he was admitting

that they were true; and that he "believ[ed] and admit[ted] that ... [the] elements ... correctly describe[d] ... [his] conduct on ... [the] various occasions." Later, while describing the process in which he completed the previously signed allotment forms, the accused admitted that he knew that the victims had not ordered the insurance, and that he performed the acts in order "to defraud ... [the victims] out of $35.00." It is evident that the last two portions of the test in *Sell* were met. The accused's responses during the providence inquiry [*see United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969)], and the accompanying stipulation of facts established he was apprised of the charges he faced and served to prevent any possibility of any further trial upon those charges.

We have held that "a specification which does not allege every essential element of an offense charged is fatally defective"; however, "[t]he specification need not aver the elements expressly, but it must do so at least by necessary implication." *United States v. McCollum,* 13 M.J. 127, 129 (C.M.A.1982); *United States v. Fleig,* 16 U.S.C.M.A. 444, 37 C.M.R. 64 (1966); *United States v. Petree,* 8 U.S.C.M.A. 9, 23 C.M.R. 233 (1957).

In the military and naval environment, the word "allotment" is one of common usage, with a settled interpretation. Army regulations define an allotment as "[a] definite portion of the pay and allowances of a person in the military service, which is voluntarily authorized to be paid to an allottee." Appendix K, Army Regulation 37–104–3, Military Pay and Allowances Procedures—Joint Uniform Military Pay System (JUMPS-Army) (C. 4, dated April 11, 1975). It is clear that the accused knew of the effect of an allotment from the very nature of the scheme he concocted to defraud the victims. We have recognized that a completed allotment form might be the subject of a forgery offense since it has the "efficacy to deprive the purported allotter of a

---

*United States v. Granberry,* 14 U.S.C.M.A. 512, 34 C.M.R. 292 (1964), we sustained convictions on specifications omitting this language where

the instrument involved was reproduced in its entirety in the specification (military transportation order and check, respectively).

portion of his pay and allowances to which he would otherwise be entitled." *United States v. Phillips,* 14 U.S.C.M.A. 620, 622, 34 C.M.R. 400, 402 (1964); *see also United States v. Addye,* 7 U.S.C.M.A. 643, 23 C.M.R. 107 (1957). The Government asserts that "an allotment is an instrument analogous to a bill, note, or check which shows its legal efficacy on its face and, hence, no further allegation of the prejudicial effects of its forgery are required." Under the particular circumstances of this case, we agree. The specifications sufficiently describe the contents of the allotments—the amount, the payee, the allotter, the fraudulent intent—to the extent that we may say that this element "of apparently impos[ing] a legal liability on another or chang[ing] his legal right or liability to his prejudice" is sufficiently alleged at least "by fair implication." *United States v. McCollum, supra* at 129.

Furthermore, the manner in which this issue was raised is significant. As noted above, the accused did not challenge the specifications at trial. Nor did his counsel comment on the matter in her response to the staff judge advocate's review. *See United States v. Goode,* 1 M.J. 3 (1975). The issue was raised for the first time before the United States Army Court of Military Review. In *United States v. Sell, supra* at 206, 11 C.M.R. at 206, we faced a similar situation and there held:

> [W]hen the pleadings have not been attacked prior to findings and sentence, it is enough to withstand a broadside

charge that they do not state an offense, if the necessary facts appear in any form or by fair construction can be found within the terms of the specification. For a certainty, appellate tribunals should not permit a pleading to be challenged for the first time on appeal merely because it is loosely drawn.

And, in *United States v. Mamaluy,* 10 U.S. C.M.A. 102, 104, 27 C.M.R. 176, 178 (1959), we held:

> Here the accused entered a plea of guilty to the offense alleged and in no manner raised any objection to the sufficiency of the pleadings. Under those circumstances, the questioned specification is insufficient [4] to withstand his charge that it does not state an offense if the necessary facts are stated in any form or by fair construction can be found within the language of the specification.

▮ In sum, we hold that in a case such as this, where the accused has pleaded guilty, has negotiated a pretrial agreement and completed a satisfactory providence inquiry based upon a specification, it does not lie for him, on appeal, to challenge the sufficiency of that specification on the basis of an omission of technical language where the specification contains, by fair implication, all of the elements of the offense.[5]

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

---

4. Clearly, the word "sufficient" is intended.

5. It need hardly be said that closer attention to the specification forms would obviate the need for opinions such as this.