**UNITED STATES, Appellee,**

v.

**Sergeant First Class Foreace JOHNSON, 064–62–4273 United States Army, Appellant.**

**ARMY 9501924.**

U.S. Army Court of Criminal Appeals.

5 Feb. 1997.

---

For Appellant: Captain Michael E. Hatch, JA; Captain Stephen P. Bell, Jr. (on brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Lyle D. Jentzer, JA; Captain Steven H. Levin, JA (on brief).

Before GRAVELLE, JOHNSTON, and ECKER Appellate Military Judges.

## OPINION OF THE COURT

**PER CURIAM:**

Pursuant to mixed pleas, the appellant was convicted by a military judge sitting as a general court-martial of larceny (eighteen specifications), forgery (twenty specifications), obstruction of justice (two specifications), and solicitation to make a false official statement, in violation of Articles 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 923, and 934 (1988) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority, in compliance with the terms of a pretrial agreement, approved the sentence but sus-

pended the confinement in excess of seventy-two months for seventy-two months.

The appellant asserts that two of the offenses of which he was convicted are multiplicious. The appellant was charged with the offense of solicitation to make a false official statement by asking another sergeant "to tell our commander and peers the person in the video wasn't me." The appellant was also charged with the offense of obstruction of justice by telling the same sergeant "to tell our commander and peers that the person in the video wasn't me."

While a technical application of current multiplicity rules might arguably establish these as separate for charging, we believe that under the facts of this case, the two offenses nevertheless are substantially one transaction and therefore represent an unreasonable multiplication of charges. Rule for Courts–Martial 307(c)(4) discussion. We will dismiss the solicitation offense.

We have reviewed the remaining assignment of error and find no merit in it. *United States v. Albrecht,* 43 M.J. 65 (1995). We have also reviewed the errors personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find no merit in them.

The finding of guilty of Specification 3 of Charge III is set aside and that Specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, this court affirms the sentence.

JOHNSTON, Judge, concurring.

I write separately to emphasize that the usual process of making a fraudulent credit card purchase, and the telephonic or self-service variants now commonplace in the marketplace, may complicate the legal analysis used to determine whether a writing has been "falsely made" or "uttered" in violation of Article 123, UCMJ.

Part of this case involves four fraudulent credit card transactions. In each of these incidents, the appellant presented the credit card to a clerk, the clerk "swiped" the card through a card reader connected to a centralized billing computer, the event was given a

transaction and reference number, a credit card charge slip was created, the appellant signed the name of another soldier on the slip to document the transaction, and the form was handed back to the store clerk. Each of these four transactions resulted in three separate charges against the appellant: larceny, forgery by false making, and forgery by uttering.

Specifications 3 (false making) and 4 (uttering) of Charge II deal with the identical fraudulent credit card charge of $43.43 at a package store on 22 April 1995 in violation of Article 123, UCMJ. Specifications 5 (false making) and 6 (uttering) of Charge II concern a credit card purchase of $54.75 at the Fort Benning Exchange on 23 April 1995. Specifications 7 (false making) and 8 (uttering) involve a similar credit card purchase for $45.00 on 24 April 1995. The final credit card purchase at a toy store for $46.52 on 26 April 1995 resulted in Specifications 9 (false making) and 10 (uttering).

The charge sheet specifications for each of these incidents includes a photocopy of the credit card charge slip. Specifications 3 and 4 of Charge II include a copy of the falsely signed credit card transaction slip that indicates, in pertinent part, Master Card Account [number], expiration date 12/95, for a $43.43 sale, authorization number 024192, and reference number 216001.[1] When the appellant signed the slip with a false signature and passed the charge slip back to the store clerk, that occurrence was treated as the making and uttering of a false writing with legal efficacy. But the transaction could be viewed as part of a process to verify identity or as the act of documenting a credit card billing transaction rather than the "uttering" of a forged writing.

In military law, the document involved in a forgery offense must be one "which would, if genuine, apparently *impose* a legal liability on another or *change* his legal right or liability to his prejudice." UCMJ art. 123 (emphasis added). This requirement is usually referred to as "legal efficacy." It is clear that the mere making of a false signature on a document is not, in itself, sufficient to constitute forgery; the apparent nature of the document is also critical. *See United States v. Thomas,* 25 M.J. 396, 398 (C.M.A.1988)(discussing the development of forgery in military law). In addition, military courts historically have interpreted the provision rather strictly. *United States v. Strand,* 6 U.S.C.M.A. 297, 20 C.M.R. 13, 1955 WL 3533 (1955); *United States v. Farley,* 11 U.S.C.M.A. 730, 29 C.M.R. 546, 1960 WL 4554 (1960).

The Court of Appeals for the Armed Forces has long held that not every writing containing false information or a false signature is a proper subject for a forgery charge. It must appear that "the writing has apparent efficacy to create, discharge, transfer, or otherwise affect a legal right or liability." *United States v. Whitson,* 14 U.S.C.M.A. 324, 326, 34 C.M.R. 104, 106, 1963 WL 4763 (1963), *quoted in United States v. James,* 42 M.J. 270 (1995). In *United States v. Phillips,* 14 U.S.C.M.A. 620, 622, 34 C.M.R. 400, 403, 1964 WL 5036 (1964), the court stated "[I]ntended or completed fraud does not constitute forgery. The written instrument used to accomplish the deception must have apparent efficacy to create, increase, diminish, discharge, transfer or otherwise affect a legal right." Paragraph 48c(4), Part IV, Manual for Courts–Martial, United States, (1995 edition), states:

With respect to the apparent legal efficacy of the writing falsely made or altered, the writing must appear either on its face or from extrinsic facts to impose a legal liability on another, or to change a legal

---

1. Unlike Specifications 3 and 4, Specifications 5, 6, 7, and 8 of Charge II contain the following additional statement beneath the space provided for a signature:

The issuer of the card identified on this item is authorized to pay the amount shown as TOTAL upon proper presentation. I promise to pay such TOTAL (together with any other charges thereon) subject to and in accordance with the agreement governing the use of such card.

Specifications 9 and 10 of Charge II also contain additional provisions:

I agree to pay the above charge in accordance with the card issuer agreement. Merchandise and/or service purchased on this card shall not be returned for cash refund.

Specifications 3 and 4 of Charge II did not include any variant of these provisions that apparently impose a legal liability upon the person signing the sales slip.

right or liability [to] the prejudice of another. If under all the circumstances the instrument has neither real nor apparent legal efficacy, there is no forgery.

While military cases have repeated the "apparent" legal efficiency language, those cases also seem to require legal efficiency in fact before a forgery is found. When the documents possessed no intrinsic capacity to affect legal rights or relationships, convictions were set aside for failure to meet the legal efficacy requirement. *See United States v. Banfield,* 37 M.J. 325 (C.M.A.1993); *United States v. Hopwood,* 30 M.J. 146 (C.M.A.1990).

Traditional legal analysis of this case leads to the conclusion that each transaction involved the making and uttering of a false writing that apparently imposed a legal liability on another. While that analysis seems correct at first blush, the traditional approach may have become more complicated in an era of electronic transactions. Chief Judge Everett, writing for the Court of Military Appeals in *Thomas,* may have foretold of this possibility:

> Since the legal effect a document would have, if genuine, depends on the rules of defining liability for contracts and torts, it would appear that a change in those rules of law would cause a corresponding change in the scope of potential criminal liability for forgery.

*Thomas,* 25 M.J. at 402, n. 5. Thus, if the falsely signed document accompanying an otherwise completed electronic transaction has no legal effect on the underlying contract of sale, the false signature on the writing may not be a forgery.

Electronic transactions such as the ones in this case also may effect traditional multiplicity analysis in regard to the two conceptually different ways under Article 123, UCMJ, to commit forgery: forgery by making and forgery by uttering. *See United States v. Albrecht,* 43 M.J. 65 (1995). In *Albrecht* the Court of Appeals for the Armed Forces specifically stated "in a given factual context, one or the other or both" of the ways to violate Article 123 might be involved. The Court went on to analyze the facts in that case to conclude that there were "two separate criminal acts committed at separate times and involving separate elements and different criminal intents." *Albrecht,* 43 M.J. at 68. Thus, the question in regard to each of the four credit card transactions in this case is whether there were (a) two separate criminal acts; (b) committed at different times; (c) involving separate elements; and (d) different criminal intents. This is primarily a factual question that focuses on the nature of the transaction.

The complexity of the traditional "making" and "uttering" analysis in a fraudulent use of a credit card case can best be seen by analyzing typical credit card transactions. Query:

a. When a purchase with a stolen credit card is made over the telephone or at a self-service computer screen, is the offense a forgery or merely a larceny? Does the piece of paper sometimes supplied as a record of the transaction apparently impose any legal liability?

b. What about the credit card billing transaction in a store that utilizes an electronic pen writing on a solid state input device. When the criminal forges the signature of the account owner on the input device, is that falsely made writing also "uttered" as that concept is defined by *Albrecht?* Should the result in this case be different because a paper version of this transaction was involved—i.e., the top copy goes to the merchant and the bottom copy to the customer?

c. When a signature is obtained during a credit card transaction, was it required by the store in order to establish apparent liability, to create a paper record in the event of computer failure, to assist in the identification process, or to create an internal accounting record for the benefit of the store? Does the actual purpose for which the signature was obtained comply with the legal efficacy requirement of forgery?

In view of the implications of these types of transactions, why should a credit card slip that contains no specific promise to pay be treated as a "making" when it is signed and as an "uttering" when it is passed back to a store clerk? Would that piece of paper, if genuine, apparently "create, discharge, transfer, or otherwise affect a legal right or

liability" *after* the card reader documented the apparently complete credit transaction on the computer network? Would the extrinsic facts surrounding the credit card computerized transaction reveal that the piece of paper bearing the false signature had legal efficacy? When faced with these situations, counsel should be prepared to prove, or to dispute, extrinsic facts that establish the legal efficacy requirement. Similarly, during a guilty plea inquiry in a forgery case, a military judge should establish the factual basis for the legal efficacy requirement.

While these concerns may give rise to appellate issues in a contested case, here the appellant entered a plea of guilty to the three charged offenses for each credit card transaction: larceny, forgery by false making, and forgery by uttering. The stipulation of fact and colloquy with the military judge during the plea inquiry provided a minimally sufficient factual basis for the pleas of guilty to forgery by making and by uttering. Thus it was unnecessary for the military judge to continue the inquiry and explore the possibility of an attempted forgery offense. In the absence of a fully developed record questioning the legal efficacy of the credit charge slip for Specifications 3 and 4 of Charge II, however, I am satisfied that the pleas of guilty in this case were provident.

