UNITED STATES, Appellee

v

WILLIAM ADDYE, Private First Class, U. S. Army, Appellant

7 USCMA 643, 23 CMR 107

No. 8694

Decided March 15, 1957

*First Lieutenant Norman W. Polovoy* argued the cause for Appellant, Accused. With him on the brief was *Major Frank C. Stetson.*

*First Lieutenant William K. Davenport* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Edward S. Nelson.*

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Tried on two specifications of forgery, the accused was acquitted of the first and convicted of the second. He was sentenced to a bad-conduct discharge, confinement at hard labor for three years, and partial forfeitures. The convening authority approved the findings and the sentence. A divided board of review affirmed the conviction but modified the sentence by reducing the period of both the confinement and the partial forfeiture to one year. We granted review.

The allegedly forged instrument is set out in its entirety in the specification. It is in the form of a letter titled "Request for Partial Payment" and is addressed to "Class 'B' Agent, Stuttgart Sub-Area." In part it reads: "Re-

644

quest that . . . [the accused] be granted a maximum partial pay" for the reason that his family "is arriving in the zone without notice," and the accused has insufficient funds to meet his anticipated expenses. The instrument purports to be signed by "Walter C. Schafer, Captain, TC, Adjutant." The first question, therefore, is whether this instrument can be the basis of a forgery conviction.

In United States v Strand, 6 USCMA 297, 302, 20 CMR 13, we pointed out that a conviction for forgery under Article 123, Uniform Code of Military Justice, 10 USC § 923, requires that the instrument alleged to have been forged "have apparent efficacy to create, increase, diminish, discharge, transfer, or otherwise affect a legal right." By itself the instrument here has no discernible legal effect. It seems to be no more than a mere request for the extension of a courtesy. United States v Strand, supra, page 302. However, we can take judicial notice of Army regulations governing active duty pay. Manual for Courts-Martial, United States, 1951, paragraph 174a. And when the letter is considered with the regulations, as it properly can be, People v Ciralsky, 360 Ill 554, 196 NE 733; Crow v State, 28 Ala App 319, 183 So 897, specific holding reversed 236 Ala 26, 183 So 907, it has definite legal significance.

Army fiscal regulations provide that troops "will be paid at the end of each month," or, under certain conditions, at a later time. AR 35–1320, paragraph 3, July 25, 1951. Provision is also made for the payment of earned pay and allowances as a "partial" payment in advance of the regular pay day. A partial payment, however, can be made only under specified circumstances. One of these is in case of "emergency, upon approval by the commanding officer." Ibid, paragraph 18. Clearly then, a letter of approval for a partial payment confers upon the holder a legal benefit he would not otherwise have. True, the fiscal officer is not bound to honor the request. Without it, however, the applicant for partial pay has absolutely no standing. The letter, therefore, is not a mere request for a courtesy, but evidence of the satisfaction of a legal condition. It is an instrument which "perfects" the accused's legal right to partial payment in advance of the time he would ordinarily be entitled to pay. See United States v Strand, supra.

Aside from the legal efficacy of the content of the letter, the accused contends that it is "absolutely and palpably void on its face" because it purports to be signed by the adjutant rather than by the commander of the accused's organization. The fiscal regulations do require the approval of the commanding officer, but the form of his approval is not stated. In the absence of a specific requirement the approval can be oral. See United States v Emerson, 1 USCMA 43, 1 CMR 43. If the approval is oral, what then would be a normal manner for its communication to the fiscal officer?

In practice, the adjutant acts for and on behalf of the commanding officer. SR 10–305–1, December 24, 1952. He is in charge of the personnel matters of the command, and under the fiscal regulations he, equally with the commander, can submit "substantiating documents to the finance and accounting officer to support entries on the military pay records." AR 35–2005, paragraph 3, May 28, 1956. In the light of these circumstances and the presumption of the regularity of official action, United States v Hagen, 2 USCMA 324, 8 CMR 124, we have no doubt that the letter has apparent legal validity.

For his second claim of error the accused contends that the law officer erred in his instructions. In part the instructions are as follows:

"As to the question of pecuniary loss; where, as here, the United States, or any agency thereof, is the injured party, pecuniary loss to the Government is not necessary to establish that the writing is of a nature which might operate to the prejudice of another. *It is enough if the acts charged tend to impair or impede a governmental function.*" [Emphasis supplied.]

As the dissenting member of the board of review below and, somewhat later, a unanimous board of review in United States v Plante, CM 391083, August 17, 1956, 22 CMR 389, noted, the italicized part of the law officer's instructions apparently first appeared in military law in United States v Irwin, 67 BR 239. There, the board of review relied upon Head v Hunter, 141 F2d 449 (CA10th Cir) (1944), which in turn cited Johnson v Warden, 134 F2d 166 (CA 9th Cir) (1943), cert den 319 US 763, 87 L ed 1714, 63 S Ct 1320. Both of the latter cases were prosecutions under a Federal statute which makes punishable the false making of a "writing, for the purpose of defrauding the United States." Construing that statute the Court of Appeals in the Johnson case said, page 167: "It is enough that the unlawful activity be engaged in for the purpose of frustrating the administration of a statute or that it tends to impair a governmental function." Testifying during the Congressional hearings on the Uniform Code, Major General T. H. Green, the Army Judge Advocate General, proposed that the language of Article 123, Uniform Code of Military Justice, 10 USC § 923, be changed to conform with these holdings. Hearings before the Subcommittee of the Senate Committee on Armed Services, 81st Congress, 1st Session, on S. 857 and H. R. 4080 (1949), page 277. Under this proposal, the requirement that the allegedly forged instrument "apparently impose a legal liability" would have been replaced by a provision that the instrument need merely have the effect of prejudicing another. See People v Morgan, 296 P 2d 75, 78 (Cal App). Congress refused to change the article. As enacted, Article 123 requires that the instrument have apparent efficacy to affect a legal right. United States v Strand, supra. Impairing or impeding a governmental function is not the same as affecting a legal right. It was, therefore, error for the law officer to give the underscored instruction.

An instructional error requires reversal of a conviction only if it appears reasonably to have prejudiced the accused. United States v Connell, 7 USCMA 228, 22 CMR 18. It may well be that the apparent legal efficacy of an allegedly forged instrument is a question of law rather than one of fact. See People v Anderson, 210 App Div 59, 205 NYS 668, affirmed 239 NY 534, 147 NE 184. The matter is unimportant here. What is important is that the court members were permitted to determine the guilt of the accused upon the basis of an incorrect rule of law. Under the circumstances, the error is prejudicial. United States v Rowan, 4 USCMA 430, 16 CMR 4; cf. United States v Gurevich, 7 USCMA 203, 21 CMR 329.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges LATIMER and FERGUSON concur.