UNITED STATES, Appellant

v

MATTHEW G. NOEL, Airman, U. S. Navy, Appellee

11 USCMA 508, 29 CMR 324

No. 13,898

Decided June 3, 1960

*Major Ted H. Collins*, USMC, was on the brief for Appellant, United States.

*Lieutenant Colonel E. W. Johnson*, USMC, was on the brief for Appellee, Accused.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of the offenses of larceny and forgery, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. He was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction to the grade of airman recruit. The convening authority approved, but the board of review reversed accused's conviction for forgery on the ground that the specification did not allege that offense and reduced the finding of larceny to wrongful appropriation. Based on the above action the board approved a sentence of confinement at hard labor for six months, forfeiture of $70.00 per month for a similar period, and reduction to the grade of airman recruit. Thereafter, The Judge Advocate General of the Navy requested us to review the ruling of the board that the instrument alleged in the specification was not a proper subject of forgery.

The facts pertaining to the issue are relatively simple. The accused sought to obtain a loan from the Navy Relief Society, a private organization whose objectives are to collect and loan funds for needy purposes. He presented himself to an interviewer at the office for the announced purpose of obtaining a loan of $10.00. He was interrogated by the interviewer who, after the discussion, concluded he was eligible for a loan in the amount requested. She made out the customary form, which authorized the treasurer of the Society to advance the accused the sum of $10.00. On the way to the treasurer's office, accused raised the sum from $10.00 to $70.00, and thereupon received cash in the increased amount.

The specification which the board found did not allege an offense is couched in the following language:

"In that Matthew G. NOEL, Airman, U. S. Navy, Fighter Squadron EIGHTY ONE, (U. S. Naval Air Station, Oceana, Virginia Beach, Virginia), did, at the U. S. Naval Air Station, Oceana, Virginia Beach, Virginia, on or about 5 June 1959, with intent to defraud, falsely alter a certain writing in the following words and figures, to wit:

■■■■■■■■■■■

S.D.–16 5556 459 74 02
HAMPTON ROADS AUXILIARY,
NAVY RELIEF SOCIETY
Naval Base, Norfolk, Virginia
5 June 1959

To: Treasurer, Hampton Roads Auxiliary.

1. You are authorized to advance the sum of $10.00 as a loan from the LOAN FUND to

NOEL, MATTHEW G.   AN   VF–81
  (Name)    (Rate)  (Station)

2. Make check(s) payable to: same
Check No. (s)
          /s/ Glynn A. Oglesby
          GLYNN A. OGLESBY
          _____
          (Executive Secretary)
S
cash payment

by adding thereto a mark at the top of the numeral 'ONE' so that the sum would read $70.00, which said writing would, if genuine, apparently operate to the legal prejudice of another."

Because the document was merely an authorization to pay, the board reasoned that it did not impose a legal liability upon the Navy Relief Society and, therefore, the offense of forgery was not alleged. We reach a contrary conclusion. Article 123, Uniform Code of Military Justice, supra, insofar as relevant to this issue, provides:

"Any person subject to this chapter who, with intent to defraud—

(1) falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice;

·   ·   ·   ·   ·

is guilty of forgery and shall be punished as a court-martial may direct."

In analyzing this section, the board of review relied entirely upon a theory that suit instituted against ■■■■■■ ■ the Navy Relief Society could not require compliance with the terms of the authorization, and hence increasing the amount could not impose any legal liability on

it. However, we believe the board too narrowly construed the language of the Article.

The preparation of the document by the interviewer was one of the required steps to obtain a loan from the Society. True it is that it could not have been compelled to advance the sum of $70.00 to the accused, but, under its business practice the treasurer was required to pay the amount shown on the application as authorized by the interviewer. That custom was followed in this case for, as the record shows, the accused received the sum of $70.00, which was greatly in excess of the amount approved by the reviewer. Certainly, the purposes of the Society require that it make well deserved emergency loans and by changing the amount of the application, the accused placed on the Society the burden to pay more than it would have advanced had the authorization not been altered.

We considered somewhat comparable situations in United States v Addye, 7 USCMA 643, 23 CMR 107, and United States v Taylor, 9 USCMA 596, 26 CMR 376. In the first mentioned case, we held that a letter to a finance officer carrying the forged signature of the adjutant of accused's organization, requesting that the accused be granted partial pay, would support a conviction for forgery. The rationale of that case was that the letter of approval for a partial payment conferred upon the holder a legal benefit he would not otherwise have. There, as here, the paying officer was not bound to honor the request but without it the applicant for partial pay had no standing to obtain any money. Just as that letter perfected the applicant's right to partial pay, the document here, in and of itself, conferred no legal right to the money but it perfected the accused's right to obtain money from the Navy Relief Society and without it he would have no possibility of obtaining any funds from the Society.

In the case of United States v Taylor, supra, we held that when an accused signed the name of a certain officer to ration books, he committed the crime of forgery. Again, in that instance the Government was not legally required

510

to honor the ration books but they were capable of affecting or changing rights and liabilities since, had they been genuine, they would perfect the accused's rights to purchase goods, wares and merchandise and charge the Government with the duty to furnish them. We went on to state that, even though the Government could refuse to sell to any one in possession of a ration book, that did not remove them from the class of documents which could be the subject of forgery.

When the case at bar is analogized with the two previously discussed, it is apparent a crime is alleged. Here the accused had perfected a legal right to obtain a loan in the sum of $10.00. We use legal in the sense that he had brought himself within a class who, upon the showing made, was entitled to a benefit from the Society. However, by changing the authorization, he raised the amount he could receive by some $60.00. He, therefore, altered a document and thereby obtained something from the Society to which he was not entitled. Moreover, he placed the Society in the position where it was misled in that it paid more than its agent had authorized. In that sort of a situation the Society's rights were impaired and the privileges of other borrowers were lessened, for raising the amount of the loan would decrease the amount available for use of other persons.

The board of review quoted from and apparently relied upon our decision in United States v Strand, 6 USCMA 297, 20 CMR 13. We do not believe that that decision supports the position taken by the board. In that case the accused drafted a letter to his wife, fraudulently affixing thereto a signature of a legal officer. The letter contained notification to the addressee that her husband, the accused, had been killed in an automobile accident. In the course of that opinion, we stated as follows:

"On its face, therefore, if genuine, the letter could not possibly prejudice the Government in any legal way. It conferred no rights against the Government, upon Patricia, or upon any-

one else which would not have existed if the letter had not been written. See Territory v DeLena, 3 Okla 573, 41 Pac 618; United States v Swan, 13 Fed 140 (ED MO) (1904)."

The above-quoted paragraph shows the difference in the two cases. There the false letter, if genuine, would not have conferred rights upon the wife, while here the forged document did in fact confer additional rights upon the accused to the prejudice of the Society. We, therefore, conclude that United States v Strand, supra, does not support the decision of the board of review.

One further argument advanced by the board bears discussion. The board of review isolated the application from the balance of the transaction and then reasoned that by itself the authorization could have no effect, legal or otherwise. We think that method of reasoning caused the board to err. When under the ordinary course of business of a loaning institution, a class of individuals are entitled to have money advanced and one of the documents necessary to obtain the loan is altered by the applicant without knowledge of the lender, the relative rights of the parties are changed, and a forgery has been effectuated. Strictly speaking, there are many documents that can be forged which are not legally enforceable until the happening of a subsequent event. By way of illustration, there is no legal right to enforce the terms of a will until the death of the maker, and a letter of credit might not be legally enforceable, but both can be the subject of forgery. In this instance, the authorization can be equated to a letter of credit, for when presented it authorized the treasurer to advance the increased amount set out on the face of the document. We, therefore, conclude the crime of forgery was alleged.

Having concluded the board erred as a matter of law, we answer the certified question in the affirmative. The decision of the board of review is reversed and the record is returned to The Judge Advocate General for reference to a board for action not in-

consistent with the views herein expressed.

Chief Judge QUINN and Judge FERGUSON concur.