**UNITED STATES**

v.

**Technical Sergeant Hollis O. HOP-
WOOD, FR 464–90–2757, United
States Air Force.**

**ACM 27437.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 25 Aug., 1988.

Decided 2 Aug. 1989.

531

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni; Major Carole W. Hanson and Major Glenn B. Hammond, USAFR.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

### DECISION

KASTL, Senior Judge:

In *United States v. Thomas*, 25 M.J. 396 (C.M.A.1988), Chief Judge Everett closely analyzed the military crime of forgery; he cautioned that "Article 123, in its present form, creates a trap for unwary prosecutors, in that the legal efficacy requirement may be overlooked." *Id.* at 402. In the case before us, we find that the prosecu-

---

1. As to the insurance purchase agreement, we are convinced of the accused's guilt and of the legal efficacy of the document. *See generally*

tion avoided that booby trap. We hold that the credit application involved here satisfied the "legal efficacy requirement" and was a proper subject of forgery.

Despite pleas of not guilty, the appellant was found guilty by a general court-martial consisting of members of false official statements and four specifications of forgery, in violation of Articles 107 and 123, UCMJ, 10 U.S.C. §§ 907, 923. His sentence is a bad conduct discharge and reduction to airman basic.

On appeal, he raises a broadside attack against his conviction, particularly as to the offenses of forgery. We find no error and affirm.

### Application for Credit

A credit application was the means the appellant allegedly used to commit the challenged forgery offense set forth in Charge II, Specification 4. He was found guilty of having forged the signatures of his brother and sister-in-law (who enjoyed good credit) on various documents in order to obtain credit and purchase a new Nissan Maxima automobile. Specification 4 alleged falsely making this credit application; Specifications 1, 2, and 3 alleged forgery of a sales contract, order, and insurance purchase agreement as other instruments employed with intent to defraud.[1]

We begin our analysis by noting that Article 123, UCMJ sets a stricter standard as to what constitutes forgery than do many civilian jurisdictions. The current Manual for Courts–Martial provides as follows:

With respect to the apparent legal efficacy of the writing falsely made or altered, the writing must appear either on its face or from extrinsic facts to *impose a legal liability* on another, or to *change a legal right or liability to the prejudice of another.*

MCM, Part IV, paragraph 48c(4)(emphasis added). In contrast, civilian requirements generally are far less stringent; the instrument "must have a *tendency* to defraud, or

*United States v. Farley,* 11 U.S.C.M.A. 730, 29 C.M.R. 546 (1960).

prejudice the rights of another, and it must therefore have *at least an apparent 'legal efficacy'.*" Clark and Marshall, *Crimes* 850 (6th Ed.1958) (emphasis added).

The essence of military forgery is this: Making a false signature or other entry on a document is not *per se* sufficient; the apparent nature of the document to impose legal liability or change legal rights is also critical. *United States v. Thomas*, 25 M.J. at 398. As *Thomas* indicates, Congress must have become fully conversant with the stricter standard when it held hearings in 1949 on the proposed new Uniform Code of Military Justice. At that time, the Judge Advocate General of the Army registered his disagreement with the draft language of Article 123, UCMJ and countered with a broader definition. Congress declined to enact his proposal. *United States v. Thomas*, at 399.[2]

■■■ The polar extremes are clear in military law. On the one hand, commercial paper which—if genuine—imposes a legal liability on another or changes his legal rights or liabilities is punishable. Contrariwise, a mere letter of introduction is not actionable; it could not impose a legal liability or change another's legal right or liability. See MCM, Part IV, paragraph 48c(4). *Cf.* Clark and Marshall, *Crimes* 853 (6th Ed.1958) (civilian rule generally to the contrary as to letters of introduction unless they clearly confer no right and impose no duty). The problem lies between the two extremes. We are then faced with the judicial equivalent of the Sesame Street game "One of these things is not like the other." The crux of the problem is how to rationally decide the cases in the middle range where the document in question appears to have some qualities from each extreme.

■■■ As to whether a credit application can be the subject of forgery, our research discloses no better rationale than that stated by Colonel Winthrop in his renowned treatise. In discussing the Articles of War and forgery in connection with making claims against the United States, he states that:

> [T]he prosecution, as in a case of forgery at common law, should be prepared to prove that the falsified signature is *upon a paper which is material,* or which appears on its face to be material, to the proof of the claim, *so as to be capable of effecting or contributing to effect some fraud in connection with it.* The writings or papers mainly had in view of the paragraph are [herein are listed various documents] the completion of which by the signature of the person interested, or of the officer whose formal authentication is required, is *essential to the substantiation* of a claim for pay, & c.

Winthrop, *Military Law and Precedents* 702 (2d Ed.1920 Reprint) (emphasis added).

Colonel Winthrop has captured the essence of what is required under military law to prove forgery, we think: The document must be material ... capable of effecting or contributing to effect some fraud ... essential to the substantiation of a claim for pay and the like. To say it another way, the document must do more than "get you in the door," as would a letter of introduction; rather, the document must adversely affect someone's legal rights.

Upon the basis of over 30 years of Air Force precedent, we conclude that the credit application here was properly a subject of forgery. *United States v. Nichols*, 27 M.J. 909, 911–912 (A.F.C.M.R.1989); *United States v. Reynolds*, 21 C.M.R. 707 (A.F. B.R.1956) (excellent discussion of prece-

---

**2.** The Court of Military Appeals in *United States v. Thomas,* 25 M.J. 396 (C.M.A.1988), held that a false credit reference form from the appellant's commander could not be the subject of forgery. Chief Judge Everett suggested that nothing in the opinion precluded the Government from initiating a prosecution "pursuant to appropriate charges." *United States v. Thomas* 25 M.J. at 402 n. 7. Unfortunately for those drafting charges, the opinion does not clarify which charges are permissible. Among viable candidates: Title 18 of the United States Code (forgery, fraud, false statements); state laws assimilated under Article 134, 10 U.S.C. § 934; larceny and wrongful appropriation under Article 121, 10 U.S.C. § 921; and attempted larceny/wrongful appropriation under Article 80, UCMJ, 10 U.S.C. § 880.

dents). *See United States v. Noel,* 11 U.S. C.M.A. 508, 29 C.M.R. 324 (1960). Our conclusion appears supported by state decisions as well—although we recognize state statutes and practice may make the cases inapposite. *See, e.g., State v. Ward,* 482 So.2d 182, 183 (La.App.1986) and *People v. Moyer,* 1 Ill.App.3d 245, 273 N.E.2d 210, 212 (Ill.App.1971); *see also People v. Stevens,* 345 P.2d 582, 584–585 (Cal.App.1959). Cases are gathered in Annot., 90 A.L.R.2d 822 (1963), Annot., 49 A.L.R.2d 852 (1956); and 37 C.J.S. *Forgery* 55–56 (1943).

This credit application was, in practical terms, one document in a set; *each* was required to effectuate a change in the legal relationship between the parties. Does the fact that the credit application was part of a pack of false writings, all of which were necessary to accomplish the result, free the appellant of criminal accountability? We think not. We are convinced that the application was effectively an instrument which perfected the appellant's claim to benefits. *See United States v. Thomas,* 25 M.J. at 401; *United States v. Noel,* 29 C.M.R. at 326; *United States v. Reynolds,* 21 C.M.R. at 711. It is immaterial that additional steps may have been needed before legal harm actually occurred. *See United States v. Driggers,* 21 U.S.C.M.A. 373, 45 C.M.R. 147 (1972). In sum, the evidence shows that the information contained in the application substantiated and generated the loan and materially helped put the appellant into the new automobile he desired. *See United States v. Nichols,* at 912. *See also United States v. Addye,* 7 U.S.C.M.A. 643, 23 C.M.R. 107 (1957).

We readily admit the issue is a difficult one. We have carefully analyzed *United States v. Thomas,* 25 M.J. at 401, which, in fairness, can be read as supporting a contrary position. We suspect that the issue of legal efficacy becomes clouded when the alleged forgery involves one of a series of documents. One might compare it to a pack of marked cards a riverboat gambler uses to perfect his scam; each of the 52 cards is innocuous enough by itself but in the pack, each one serves to set up and accomplish the scam. As to the proper legal standard, the Court states in *Thomas* that:

> [T]he test for forgery—and derivatively for uttering a forged writing—is not whether the writing was a cause in fact or a *sine qua non* but whether it "would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice."

*Id.* at 401. We view the credit application as a document imposing such liability. It was patently essential to effectuating the fraud and was one crucial step in perfecting a scheme to defraud the merchant of something of value. *United States v. Addye,* 23 C.M.R. at 109. The credit application had "legal clout" on its own merit in that the merchant in question would employ the document as an indispensable prerequisite to benefit the appellant. Therefore, unlike a letter of introduction or a fictitious testimonial from a commander, this credit application was a proximate and direct means by which the appellant defrauded others. *See United States v. Noel,* 29 C.M.R. at 327. Accordingly, we believe our decision here—and in our recent *Nichols* case—honors the standard set forth in *United States v. Thomas.*[3]

Accordingly, we resolve this assigned error against the appellant.

**Admissibility of Statement Under Mil.R. Evid. 612**

◼ At trial, the Government presented Mr. Edward Sullivan as a witness regarding the sale of the Nissan automobile

---

**3.** In *United States v. English,* 25 M.J. 819 (A.F.C. M.R.1988), this Panel reasoned that a letter from a fictitious military accountant that the appellant would be able to repay a loan was sufficient to amount to a forgery. That decision was reversed by the Court of Military Appeals in *United States v. English,* 27 M.J. 400 (C.M.A. 1988). The Government conceded error and the matter was not extensively analyzed. We read the reversal in *English* to have been based upon: (a) the Government's concession of error; and (b) a unique factual situation, which aligned that case with others in which the document in question—while furnishing some signal to the creditor that the accused was trustworthy—has little or no *legal* value *per se. See United States v. Strand,* 6 U.S.C.M.A. 297, 20 C.M.R. 13 (1955).

to the appellant. The defense cross-examined Mr. Sullivan's about his earlier statement to an agent of the Office of Special Investigations, to show that he was testifying at trial inconsistently with that earlier statement; however, the defense never introduced the document into evidence. Later, the prosecution offered the document into evidence, over defense objection. The prosecution argued that the document was admissible both as a prior consistent statement and to refresh the witness's memory. The military judge admitted the statement.

We find the document admissible upon two grounds. In the first place, it appears to be a prior consistent statement, acceptable under Rule 801(d)(1)(B). *See United States v. Meyers*, 18 M.J. 347 (C.M.A.1984). Moreover, we believe the statement could be validly employed to assist the witness to refresh his memory under Mil.R.Evid. 612. *See United States v. Haston*, 24 M.J. 313 (C.M.A.1987) (expansive view of the Rule); *see also* Saltzburg, Schinasi & Schlueter, *Military Rules of Evidence Manual* 563–565 (2d Ed.1986).

### Admissibility of Letter of Reprimand

■ The appellant next argues that a letter of reprimand was not a legitimate management tool but rather a last-minute gimmick to enhance the appellant's sentence. Charges in this case were preferred in April 1988; the letter of reprimand was dated 13 June 1988; trial was held in August 1988. The trial counsel explained that the commander had received a report of the appellant's indebtedness and had taken action because of that report. The indebtedness extended over some 18 months.

We are satisfied that the reprimand in question fulfilled a legitimate correctional function and was not an effort to exaggerate the appellant's sentence. *United States v. Boles*, 11 M.J. 195 (C.M.A.1981); *United States v. Beaver*, 26 M.J. 991, 993 (A.F.C.M.R.1988); *United States v. Hill*, 13 M.J. 948, 950 (A.F.C.M.R.1982).

### Multiplicity for Findings

■ Finally, our attention is invited to the defenses motion at trial to either: (a) dismiss the various specifications of Charge II involving forged documents; or (b) merge them. Relying on *United States v. Baker*, 14 M.J. 361 (C.M.A.1983) and *United States v. Burris*, 21 M.J. 82 (C.M.A.1985), the defense argues once again before us that the matters are multiplicious for findings. The defense insists that the appellant "entered into one transaction to buy a car" and "signed all the the forms referred to in Specifications 1, 2, 3, and 4 of Charge II to perfect the sale." Furthermore, insists the defense, "the sale would not have been completed without his signing all four forms."

We decline to so rule and find that the military judge correctly refused to grant the defense motion. Different interests affecting General Motors Acceptance Corporation, Pioneer Nissan, and a local insurance company are involved here. Furthermore, several of the documents were signed at different times and places. The military judge ruled correctly in this matter.

The findings of guilty and the sentence are correct in law and fact and, upon the entire record, are

AFFIRMED.

Judge BLOMMERS concurs.

Senior Judge LEWIS (concurring/dissenting in part):

It is utterly ridiculous that military appellate courts go through such gyrations whenever a close question arises with respect to the legal efficacy of a document for the purpose of an Article 123 prosecution. Senior Judge Kastl has provided an excellent analysis of the law and achieves a sensible result. I hope the majority opinion points us in the direction the military law is likely to move. Unfortunately, I am unable to reconcile the result reached with my understanding of *Thomas*. I would set aside the findings of guilty of Specifications 3 and 4 of Charge II and reassess the sentence. Having done so, I would find the approved sentence of a bad conduct discharge and reduction to airman basic nonetheless appropriate.