UNITED STATES, Appellee,

v.

Keith A. WHITE, Private,
U.S. Army, Appellant.

No. 67,274.

CM 9000583.

U.S. Court of Military Appeals.

Submitted Dec. 19, 1991.

Decided Sept. 14, 1992.

For Appellant: *Lieutenant Colonel James H. Weise, Captain Michael P. Moran, Captain Teresa L. Norris* (on pleadings).

For Appellee: *Captain Donna L. Barlett* (on pleadings).

PER CURIAM:

Appellant was tried by a general court-martial composed of a military judge sitting alone at Fort Hood, Texas. Contrary to his pleas, he was found guilty of attempted larceny, absence without leave (2 specifications), larceny (13 specifications), forgery (7 specifications), and wrongful possession and use of a military identification card, in violation of Articles 80, 86, 121, 123, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 886, 921, 923, and 934, respectively. On February 1, 1990, appellant was sentenced to a dishonorable discharge, confinement for 12 years, and total forfeitures. The convening authority

approved the sentence on April 27, 1990, and the Court of Military Review affirmed on August 20, 1991.

This Court granted review on the following issue raised by counsel:

> WHETHER ADDITIONAL CHARGE IV, SPECIFICATIONS 2 AND 4, FAIL TO STATE AN OFFENSE BECAUSE THE DOCUMENTS IN QUESTION (BANK SIGNATURE CARD AND ACCOUNT AGREEMENT FORM) LACK LEGAL EFFICACY AND CANNOT BE THE SUBJECT OF FORGERY AS A MATTER OF LAW.

We hold that each of the above specifications states an offense under Article 123. *See generally United States v. Burnette,* 35 MJ 58 (CMA 1992), *United States v. Ivey,* 35 MJ 62 (CMA 1992).

---

Evidence in the record shows that on July 31, 1989, appellant stole a military identification card belonging to a fellow serviceman, Private First Class Johnson Buchanan. Appellant used this identification card to fraudulently open "Advantage Plus" checking accounts in Buchanan's name. The accounts were opened by appellant's making Buchanan's signature on signature card and account application forms at different branches of the same bank.

On August 10, 1989, appellant opened a checking account at the First National Bank—Trimmier branch in Killeen, Texas. He did not deposit any funds into this account. However, the account opened was a direct deposit account which immediately provided him with $400.00 "overdraft privileges." He was also given an automatic-teller-machine (ATM) card as part of this transaction which he used on August 11, 1989, to withdraw $400.00.

On August 16, 1989, appellant opened another checking account at the First National Bank—Gray Street branch in Killeen, Texas. He deposited no money in the second account but again received an ATM card and $400.00 overdraft protection.

However, that "account was never activated and neither was the teller card."

---

Appellant was found guilty of the following two specifications which are the subject of the granted issue:

> Specification 2: In that [appellant] did, at or near Killeen, Texas, on or about 10 August 1989, with intent to defraud, falsely make the signature of Johnson Buchanan on a bank signature card and an account agreement form, checking account number 13–3580–4, First National Bank, 2201 South Trimmier Road, Killeen, Texas, *which said writings would, if genuine, apparently operate to the legal harm of another.*

> \* \* \*

> Specification 4: In that [appellant] did, at or near Killeen, Texas, on or about 16 August 1989, with intent to defraud, falsely make the signature of Johnson Buchanan on a bank signature card and an account agreement form, checking account number 13–3513–8, First National Bank, 507 North Gray Street, Killeen, Texas, *which said writings would, if genuine, apparently operate to the legal harm of another.*

(Emphasis added.)

He asserts for the first time on appeal that a "bank signature card and account agreement form" cannot as a matter of law be the subject of a forgery offense under Article 123. *See United States v. Hopwood,* 30 MJ 146 (CMA 1990); *United States v. Thomas,* 25 MJ 396, 401–02 (CMA 1988). We disagree.

Article 123 defines forgery as follows:

> Any person subject to this chapter who, with intent to defraud—
>
> (1) falsely makes or alters any signature to, or any part of, *any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice;* or
>
> (2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered;

is guilty of forgery and shall be punished as a court-martial may direct.

(Emphasis added.)

Paragraph 48(c)(4), Part IV, Manual for Courts–Martial, United States, 1984, explains the President's view of the type of writing which can be the proper subject of a forgery prosecution under Article 123. It states:

(4) *Nature of writing.* The writing must be one which would, if genuine, apparently impose a legal liability on another, as a check or promissory note, or change that person's legal rights or liabilities to that person's prejudice, as a receipt. Some other instruments which may be the subject of forgery are orders for the delivery of money or goods, railroad tickets, and military orders directing travel. A writing falsely "made" includes an instrument that may be partially or entirely printed, engraved, written with a pencil, or made by photography or other device. A writing may be falsely "made" by materially altering an existing writing, by filling in a paper signed in blank, or by signing an instrument already written. *With respect to the apparent legal efficacy of the writing falsely made or altered, the writing must appear either on its face or from extrinsic facts to impose a legal liability on another, or to change a legal right or liability to the prejudice of another. If under all the circumstances the instrument has neither real nor apparent legal efficacy, there is no forgery.* Thus, the false making with intent to defraud of an instrument affirmatively invalid on its face is not forgery nor is the false making or altering, with the intent to defraud, of a writing which could not impose a legal liability, as a mere letter of introduction. However, the false making of another's signature on an instrument with intent to defraud is forgery, even if there is no resemblance to the genuine signature and the name is misspelled.

(Emphasis added.)

■ We agree with this explanation of the military offense of forgery. *See Unit-*

*ed States v. Thomas, supra.* Moreover, we have previously held that a checking-account application may be the subject of a forgery prosecution if, under the circumstances of a particular case, the writing incurs legal liability for another. *See United States v. Burnette* and *United States v. Ivey,* both *supra.* Therefore, in view of the language of the above specifications which contain allegations of legal efficacy, we must conclude that each challenged specification states an offense.

■ Appellant also suggests that the prosecution failed to prove that the checking-account applications which he signed had legal efficacy. *See United States v. Hopwood* and *United States v. Thomas,* both *supra.* We note that this was a contested case and the prosecution introduced ample evidence on this point for each offense.

First, the signature card and account-agreement forms established the various types of legal obligations imposed on the bank and the account holder. (*See* Appendices A and B.) These responsibilities included, *inter alia,* a $10.00 maintenance fee for account balances below $25.00 and a $15.00 insufficient-funds fee for overdrawn accounts. *United States v. Burnette* and *United States v. Ivey,* both *supra.* Second, the testimony of representatives of the bank established that on each occasion appellant was apparently provided $400.00 credit in the form of overdraft protection and an ATM card to immediately access it. *See United States v. Noel,* 11 USCMA 508, 29 CMR 324 (1960); *United States v. Addye,* 7 USCMA 643, 23 CMR 107 (1957). In view of this evidence we hold that the prosecution met its burden of proof on this element of the military offense of forgery. *See generally United States v. Hart,* 25 MJ 143 (CMA 1987), *cert. denied,* 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988).

The decision of the United States Army Court of Military Review is affirmed.

## APPENDIX A

1. X _Johnson Buchanan_

2. X _____

3. X _____

☐ SAVINGS

☐ N.O.W

☒ CHECKING

1⌐ 3580-4
ACCOUNT NUMBER

Number of Signatures Required for Withdrawal: 1

**SIGNATURES** – The above signed agree(s) to the terms stated on this form and acknowledge(s) receipt of at least one copy on the date stated.

MEMO: M    ADVANTAGE PLUS    MFC    D.O.B. 12-13-67

OTHER SERVICES:
☐ Automatic Transfer _____
☐ _____

☐ ATM Access    ☐ Direct Deposit
☐ Telephone Transfer  ☐ Automatic Payment

NAME OF ACCOUNT

Johnson Buchanan
    B BTRY 3/3 FA, 2AD
    Fort Hood, Tx 76546

ACCOUNT ADDRESS

FEDERAL I.D.# OR SOC. SEC. #

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

1. _____
2. _____

TO: **FIRST NATIONAL BANK, Killeen, Texas 76541**

© BANKERS SYSTEMS INC 1981 ST CLOUD MN 5/81

ACCOUNT AGREEMENT

### INTEREST, TIME AND CHARGES

a ANNUAL INTEREST RATE _____ %

b COMPOUNDED _____

c ANNUAL YIELD _____ %

d ASSUMED DAYS ANNUM _____

e STATEMENT CYCLE _____

f DAILY CUT-OFF TIME _____

g MAINTENANCE FEE $ 10.00 If Balance

h FEE _____ $ falls below 25.00

i INSUFFICIENT FUNDS ITEM $ 15.00

j OVERDRAFT ITEM $ _____

k RETURNED DEPOSIT ITEM $ 15.00

l STOP-PAYMENT REQUEST $ _____

m CHECKS (PER _____ ) $ _____

n _____ $ _____

"I have received a fund availability disclosure on to day's date _____ (initials)"

ACCOUNT NUMBER: 13-3580-4

NUMBER OF SIGNATURES REQUIRED FOR WITHDRAWAL: 1

☒ TAXPAYER I D NUMBER MY CORRECT TAXPAYER IDENTIFICATION NUMBER IS
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

☒ BACKUP WITHHOLDING I AM NOT SUBJECT TO BACKUP WITHHOLDING EITHER BECAUSE I HAVE NOT BEEN NOTIFIED THAT I AM SUBJECT TO BACKUP WITHHOLDING AS A RESULT OF A FAILURE TO REPORT ALL INTEREST OR DIVIDENDS OR THE INTERNAL REVENUE SERVICE HAS NOTIFIED ME THAT I AM NO LONGER SUBJECT TO BACKUP WITHHOLDING

☐ EXEMPT RECIPIENT I AM AN EXEMPT RECIPIENT UNDER THE INTERNAL REVENUE SERVICE REGULATIONS (SEE INSTRUCTIONS )

SIGNATURE BY SIGNING BELOW I CERTIFY UNDER PENALTIES OF PERJURY THE STATEMENTS CHECKED IN THIS BOX

_Johnson Buchanan_

### TYPE OF ACCOUNT – PERSONAL:

☒ INDIVIDUAL
☐ JOINT - WITH SURVIVORSHIP
☐ _____
☐ _____

DATE 8/10/89    BY MFC / DD

INITIAL DEPOSIT $ _____

OCCUPATION(S) Army E1

TELEPHONE NO 'S 287-5932

OTHER BANKING NA

MID I862050

### TYPE OF ACCOUNT – BUSINESS:

☐ SOLE PROPRIETORSHIP
☐ PARTNERSHIP
☐ CORPORATION FOR PROFIT
☐ CORPORATION NOT FOR PROFIT
☐ _____

BUSINESS _____
COUNTY AND STATE OF ORGANIZATION _____
AUTHORIZATION DATED _____

(Name and address of someone who will always know your whereabouts)

**158**

**AGREEMENT** - The following printed terms will govern the operation of this account unless clearly varied in writing or typing on this form or in a separate written agreement. "We," "our," or "us" means the depository institution and "you" means the account holder(s) This agreement includes your promise to pay the charges listed on the other side of this form and your permission for us to deduct these charges, as earned, directly from the account balance You also agree to pay any additional reasonable charges we may impose for services you request which are not contemplated by this agreement. Each of you agrees to be jointly and severally liable for any account deficit resulting from charges or overdrafts, whether caused by you or another authorized to withdraw from this account, together with the costs we incur to collect the deficit including to the extent permitted by law, our reasonable attorneys' fees.

This agreement incorporates clearinghouse rules and state and federal law, except to the extent that this agreement can and does vary such rules or law

**DEPOSITS** - Any non-cash items tendered for deposit (including items drawn "on us") will be given provisional credit only until collection is final (and actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U S dollars) We are not responsible for transactions initiated by mail or outside depository until we actually record them.

**WITHDRAWALS** - Any one of you who signs on the reverse side may withdraw or transfer all or any part of the account balance at any time on forms approved by us (subject to the limits in the next paragraph). Each of you (until we receive actual notice of your death, incapacity, or notice in writing to change this account' authorizes each other person signing this form to endorse any item payable to you or your order for deposit to this account or any other transaction with us. We are not obligated to honor any withdrawal request which would overdraw the finally collected account balance, regardless of the frequency with which we may do so hereafter, unless required by law to do so

We reserve the right to refuse any withdrawal or transfer request which is for an amount less than any minimum withdrawal or which exceeds any frequency limitation Repeated abuse of the stated limitations (if any) may eventually force us to close this account. We will use the date a transaction is completed by us (as opposed to the day you initiate it) to apply the frequency limitations.

We reserve the right to require at least seven days' written notice before any withdrawal or transfer from an interest-bearing account

**OWNERSHIP OF ACCOUNT** - The following provisions explain the rules applicable to this account depending on the form of ownership specified on the reverse side Only the portion corresponding to the form of ownership specified will apply **Individual Account** - Such an account is issued to one person who does not intend (merely by opening this account) to create any survivorship rights in any other person. **Joint Account - With Survivorship** - Such an account is issued in the name of two or more persons On the death of one of you, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate However, if two or more of you survive, you will own the balance in the account as joint tenants with survivorship. **Joint Account - No Survivorship** -Such an account is issued to two or more persons but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you This information will not, however, affect the "number of signatures" necessary for withdrawal **Trust Account and Pay-On-Death Account** - The person creating either of these account types intends that any named beneficiary acquires the right to withdraw from this account only if (1) the person creating the account dies and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of the person creating the account, such beneficiaries will own this account in equal shares without any right of survivorship The person creating either of these account types reserves the right to (1) change beneficiaries (2) change account types; and (3) withdraw all or part of the deposit at any time during his or her lifetime **Corporate, Partnership, and other Organizational Accounts** - We reserve the right to require the governing body of the legal entity to give us a separate authorization telling us who is authorized to act on its behalf We will honor such an authorization until we actually receive written notice of a change from the governing body.

**ACCOUNT TRANSFER** This account may not be transferred or assigned without our written consent

**AMENDMENTS AND TERMINATION** - We may amend any term of this agreement at any time upon reasonable notice to you We may also close this account at any time by giving notice and mailing the account balance to you Notice from us to any one of you is notice to all of you

**TELEPHONE TRANSFERS** - Transfers of funds from this account to another account with us, by telephone if otherwise permitted may be made by the same persons and under the same conditions generally applicable to withdrawals by written order We restrict the number of transfers from a savings account to another account to a maximum of three per month (less the number of certain preauthorized transfers for the month)

**STOP-PAYMENTS** - We will honor a stop-payment request by the person who signed the particular item and by any other person having the right to withdraw from this account equal to or greater than the person signing the particular item To be effective, a stop-payment order must be received in time to give us a reasonable opportunity to act on it, and must precisely identify the number, date and amount of the item, and the payee.

**STATEMENTS** - If you do not notify us of an unauthorized signature or alteration within a reasonable time (not to exceed 14 days) after we send or make available to you your statement and items you cannot assert the unauthorized signature or alteration against us, even if we are unable to show loss due to your failure and, (2) you cannot assert any unauthorized signatures or alterations by the same wrongdoer on items paid by us after the reasonable time mentioned above elapses, but before we receive your notice. We lose these protections if we fail to exercise ordinary care in paying an item with an unauthorized signature or alteration unless you do not notify us of the problem within 60 days of when we send or make available to you the statement and items. You must also report any other account problem (e.g. erroneous statement or passbook entry, missing signature, unauthorized endorsement, etc.) within this 60-day period or lose your right to assert the problem against us

**DIRECT DEPOSITS** - If, in connection with a direct deposit plan, we deposit any amount in this account which should have been returned to the Federal Government for any reason, you authorize us to deduct the amount of our liability to the Federal Government from this account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**SET-OFF** - By signing this form you each agree that we may at any time (without prior notice, except as prohibited by law) set-off the funds in this account against any debt owed to us now or in the future, by any of you having the right of withdrawal, subject to any limit on the right of withdrawal from this account by such person or legal entity

This right of set-off does not apply to this account if (a) it is an IRA or a tax-deferred retirement account; or (b) the debt is created by a consumer credit transaction under a credit card plan; or (c) the debtor's right of drawal arises only in a representative capacity.

FORM AA SC A TX AA .. o TX 10 15 87

1. X _Johnson Buchanan_
2. X _____
3. X _____

☐ SAVINGS
☐ N.O.W.
☑ CHECKING

'3-3513-8
COUNT NUMBER

Number of Signatures Required for Withdrawal

SIGNATURES – The above signed agree(s) to the terms stated on this form and acknowledge(s) receipt of at least one copy on the date stated.

MEMO. Advantage Plus

D.O.B. 12-13-67

OTHER SERVICES
☐ Automatic Transfer_____
☐ _____

☐ ATM Access    ☐ Direct Deposit
☐ Telephone Transfer    ☐ Automatic Payment

NAME OF ACCOUNT

Johnson Buchanan
a Btry 3/3 FA 2AD
        Ft. Hood, Tx. 76544

ACCOUNT ADDRESS ·

FEDERAL I.D. # OR SOC. SEC. #

1. _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_
2. _____

TO:    **FIRST NATIONAL BANK, Killeen, Texas 76541**

© BANKERS SYSTEMS INC '1981 ST CLOUD MN 5/81

ACCOUNT AGREEMENT

**INTEREST, TIME AND CHARGES**

a ANNUAL INTEREST RATE 11 ~ 75 1281-68
b COMPOUNDED_____
c ANNUAL YIELD _____%
d ASSUMED DAYS ANNUM _____
e STATEMENT CYCLE_____
f DAILY CUT-OFF TIME_____
g MAINTENANCE FEE    $10.00 under 25.0
h FEE PER WITHDRAWAL ITEM    $_____
i INSUFFICIENT FUNDS ITEM    $15.00
j OVERDRAFT ITEM    $_____
k RETURNED DEPOSIT ITEM    $15.00
l STOP-PAYMENT REQUEST    $_____
m CHECKS (PER_____)  $_____
n _____    $_____

"I have received a funds availability disclosure on to-day's date Y 76_____(initials)".

**TYPE OF ACCOUNT – PERSONAL·**
☐XX INDIVIDUAL
☐ JOINT · WITH SURVIVORSHIP
☐ _____
☐ _____

MID. I862050

**TYPE OF ACCOUNT – BUSINESS:**
☐ SOLE PROPRIETORSHIP
☐ PARTNERSHIP
☐ CORPORATION · FOR PROFIT
☐ CORPORATION · NOT FOR PROFIT
☐ _____
    89-1881-116

ACCOUNT NUMBER    I3-3513-8

NUMBER OF SIGNATURES REQUIRED FOR WITHDRAWAL

☒ TAXPAYER I D NUMBER    MY CORRECT TAXPAYER IDENTIFICATION NUMBER IS

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

☒ BACKUP WITHHOLDING   I AM NOT SUBJECT TO BACKUP WITHHOLDING EITHER BECAUSE I HAVE NOT BEEN NOTIFIED THAT I AM SUBJECT TO BACKUP WITHHOLDING AS A RESULT OF A FAILURE TO REPORT ALL INTEREST OR DIVIDENDS OR THE INTERNAL REVENUE SERVICE HAS NOTIFIED ME THAT I AM NO LONGER SUBJECT TO BACKUP WITHHOLDING

☐ EXEMPT RECIPIENT   I AM AN EXEMPT RECIPIENT UNDER THE INTERNAL REVENUE SERVICE REGULATIONS (SEE INSTRUCTIONS)

SIGNATURE   BY SIGNING BELOW I CERTIFY UNDER PENALTIES OF PERJURY THE STATEMENTS CHECKED IN THIS BOX

X _Johnson Buchanan_

DATE 8-16-89    BY MRP

INITIAL DEPOSIT $_____
OCCUPATION(S) Army E-2
TELEPHONE NO $ wk. 287-5121

OTHER BANKING_____

Home Address:
651 Elm St.
Atlanta, G.A. 35125

Friend/DDØ

BUSINESS_____
COUNTY AND STATE OF ORGANIZATION_____
AUTHORIZATION DATED_____

(Name and address of someone who will always know your whereabouts)

**AGREEMENT** - The following printed terms will govern the operation of this account, unless clearly varied in writing or typing on this form or in a separate written agreement. "We," "our," or "us" means the depository institution and "you" means the account holder(s). This agreement includes your promise to pay the charges listed on the other side of this form and your permission for us to deduct these charges, as earned, directly from the account balance. You also agree to pay any additional reasonable charges we may impose for services you request which are not contemplated by this agreement. Each of you agrees to be jointly and severally liable for any account deficit resulting from charges or overdrafts, whether caused by you or another authorized to withdraw from this account, together with the costs we incur to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

This agreement incorporates clearinghouse rules and state and federal law, except to the extent that this agreement can and does vary such rules or law.

**DEPOSITS** - Any non-cash items tendered for deposit (including items drawn "on us") will be given provisional credit only until collection is final (and actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S dollars) We are not responsible for transactions initiated by mail or outside depository until we actually record them.

**WITHDRAWALS** - Any one of you who signs on the reverse side may withdraw or transfer all or any part of the account balance at any time on forms approved by us (subject to the limits in the next paragraph). Each of you (until we receive actual notice of your death, incapacity, or notice in writing to change this account) authorizes each other person signing this form to endorse any item payable to you or your order for deposit to this account or any other transaction with us We are not obligated to honor any withdrawal request which would overdraw the finally collected account balance, regardless of the frequency with which we may do so hereafter, unless required by law to do so.

We reserve the right to refuse any withdrawal or transfer request which is for an amount less than any minimum withdrawal or which exceeds any frequency limitation Repeated abuse of the stated limitations (if any) may eventually force us to close this account. We will use the date a transaction is completed by us (as opposed to the day you initiate it) to apply the frequency limitations.

We reserve the right to require at least seven days' written notice before any withdrawal or transfer from an interest-bearing account

**OWNERSHIP OF ACCOUNT** - The following provisions explain the rules applicable to this account depending on the form of ownership specified on the reverse side. Only the portion corresponding to the form of ownership specified will apply. **Individual Account** - Such an account is issued to one person who does not intend (merely by opening this account) to create any survivorship rights in any other person. **Joint Account - With Survivorship** - Such an account is issued in the name of two or more persons. On the death of one of you, all sums in the account on the date of the death vest in and belong to the surviving party as his or her separate property and estate. However, if two or more of you survive, you will own the balance in the account as joint tenants with survivorship **Joint Account - No Survivorship** -Such an account is issued to two or more persons, but none of you intend (merely by opening this account) to create any right of survivorship in any other person We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the "number of signatures" necessary for withdrawal. **Trust Account and Pay-On-Death Account** - The person creating either of these account types intends that any named beneficiary acquires the right to withdraw from this account only if (1) the person creating the account dies, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of the person creating the account, such beneficiaries will own this account in equal shares, without any right of survivorship. The person creating either of these account types reserves the right to (1) change beneficiaries, (2) change account types; and (3) withdraw all or part of the deposit at any time during his or her lifetime. **Corporate, Partnership, and other Organizational Accounts** - We reserve the right to require the governing body of the legal entity to give us a separate authorization telling us who is authorized to act on its behalf. We will honor such an authorization until we actually receive written notice of a change from the governing body.

**ACCOUNT TRANSFER** - This account may not be transferred or assigned without our written consent.

**AMENDMENTS AND TERMINATION** - We may amend any term of this agreement at any time upon reasonable notice to you. We may also close this account at any time by giving notice and mailing the account balance to you. Notice from us to any one of you is notice to all of you.

**TELEPHONE TRANSFERS** - Transfers of funds from this account to another account with us, by telephone, if otherwise permitted, may be made by the same persons and under the same conditions generally applicable to withdrawals by written order. We restrict the number of transfers from a savings account to another account to a maximum of three per month (less the number of certain preauthorized transfers for the month).

**STOP-PAYMENTS** - We will honor a stop-payment request by the person who signed the particular item and by any other person having the right to withdraw from this account equal to or greater than the person signing the particular item. To be effective, a stop-payment order must be received in time to give us a reasonable opportunity to act on it, and must precisely identify the number, date and amount of the item, and the payee.

**STATEMENTS** - If you do not notify us of an unauthorized signature or alteration within a reasonable time (not to exceed 14 days) after we send or make available to you your statement and items. (1) you cannot assert the unauthorized signature or alteration against us, even if we are unable to show a loss due to your failure and, (2) you cannot assert any unauthorized signatures or alterations by the same wrongdoer on items paid by us after the reasonable time mentioned above elapses, but before we receive your notice. We lose these protections if we fail to exercise ordinary care in paying an item with an unauthorized signature or alteration. unless you do not notify us of the problem within 60 days of when we send or make available to you the statement and items. You must also report any other account problem (e.g. erroneous statement or passbook entry, missing signature, unauthorized endorsement, etc.) within this 60-day period or lose your right to assert the problem against us.

**DIRECT DEPOSITS** - If in connection with a direct deposit plan, we deposit any amount in this account which should have been returned to the Federal Government for any reason, you authorize us to deduct the amount of our liability to the Federal Government from this account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**SETOFF** - By signing this form you each agree that we may at any time (without prior notice, except as prohibited by law) set-off the funds in this account against any debt owed to us now or in the future, by any of you having the right of withdrawal, subject to any limit on the right of withdrawal from this account by such person or legal entity.

This right of set-off does not apply to this account if, (a) it is an IRA or a tax-deferred retirement account; or (b) the debt is created by a consumer credit transaction under a credit card plan; or (c) the debtor's right of withdrawal arises only in a representative capacity.

FORM BA SC A TX AA___ . TX 10-15 87

KOL   30 NOV 8S